## BURTON *v.* THE STATE.

One can not legally be convicted of the offense of assault with intent to murder, alleged to have been committed with a pistol, upon proof which merely shows that he drew the weapon from his hip-pocket, and, in consequence of its being caught in the lining of his coat, did not make any actual attempt to inflict with the pistol an injury upon the person alleged to have been assaulted.

Argued October 4, — Decided October 27, 1899.

Indictment for assault with intent to murder. Before Judge Brinson. Richmond superior court. April term, 1899.

The plaintiff in error was indicted for and convicted of the offense of assault with intent to murder. He made a motion for a new trial, on various grounds, which being overruled, he excepted. Only two witnesses testified in the case, both of whom were introduced by the State. One of these testified as follows: Witness was a baggage-master on the Georgia Railroad. On the date the offense is alleged to have been committed, he started out of Augusta, Ga., on the night express. . He started to the front end of the baggage-car, to see if any one was out there, and met the porter coming in, who said that two men were out on the front. Witness then went out and asked them to come inside, and one of them got off. The other, the accused, refused to come in, but finally came up on the platform near the witness, who caught hold of his arm, to pull him inside, and, when he did that, the accused " threw his hand back to his hip-pocket and jerked out a pistol, and it got caught in the lining of his coat, which was torn, and the pistol fell on the floor." In the language of this witness, " His manner in pulling out that pistol was, that he just run his hand back there very quick, like he was in a big hurry, and jerked it out that way [illustrating with a quick motion to his hip-pocket and thence up to his waist]. I was trying to get him in the car when he did that. When the pistol fell he jumped at the pistol and attempted to pick it up again, and I attempted to keep him off it, and there was a tussle there between him and me, and I finally got him back off the pistol. . . He was doing all he could to get the pistol, and I was doing all I could to

keep him from getting it, and the porter was standing there and picked up the pistol about that time. . . When I told him to come into the car he refused, and I caught him by the arm and endeavored to bring him into the car. At that time he reached for a pistol. When I caught hold of his arm, he jumped by me in the car door, and threw his hand back there [indicating to hip-pocket] and drew a pistol. That pistol was not in his coat pocket; it was in his pants pocket. He jerked loose from me. It all happened in about a second."

The train porter testified that he discovered two men, one of whom was the accused, on the front end of the baggage-car, and told them that they would "either have to come back through the train or get off"; that the accused said to his companion, "Don't get off, but stay up here with me." Witness then said, "Come on in, come on in, or get off." Whereupon the accused said, "No, by God, I am not going to come in and I am not going to get off." The witness succeeded in getting the man with the accused to get off the train, and, failing in his efforts to get the accused to do likewise, went inside for assistance and reported the matter to the baggage-master. Then — quoting from the report of this witness's testimony contained in the record — "He [the baggage-master] started out to the front, and he says, 'Hey, boys, what are you doing out there?' So they were talking there, and I heard him say, 'Come on in, we don't haul passengers out there'; and they gave each other some pretty stiff talk out there, but of course I didn't hear exactly what that was. So he reached out and grabbed this fellow by his hand, and pulled him inside the door, . . and when he pulled him inside the car door this fellow [defendant] reached back with his hand to his pocket, just so [indicating hip pocket], and, as his elbow got inside the car door, he pulled his pistol out, and it got hung in the lining of his coat, and as he went to bring his hand around, the lining of his coat snatched it out of his hand, and it fell on the floor, and Mr. Chandler [the baggage-master] and that man [defendant] was in a scuffle, and they both was trying to get it, and while they were scuffling I went down and got it, and after I got it he says, 'Well, boys, you all have got it on me; if I had got it on

you I would have used it, and you can use it on me or not.'"
The witness further testified that the pistol was loaded.

*C. E. Dunbar* and *E. H. Callaway*, for plaintiff in error.

*W. H. Davis,* solicitor-general, by *Anderson, Felder & Davis,*
contra.

FISH, J.    In the view which we take of this case, it is only
necessary to consider that ground of the motion which alleges
that the verdict was contrary to law and the evidence.    In our
opinion, the evidence, which is set out in the reporter's state-
ment, is not sufficient to sustain the conviction.    The drawing
of the pistol by the accused from his pocket was neither pre-
ceded by nor accompanied with any threat whatever.    What
he would have done with the weapon, if it had not caught in
the lining of his coat and fallen from his grasp, is mere mat-
ter for conjecture.    His saying, after the porter had picked up
the pistol, and after the struggle between himself and the bag-
gage-master for its possession was over, "Well, boys, you all
have got it on me; if I had got it on you, I would have used
it," did not necessarily show that at the time that he drew the
weapon from his pocket he intended to kill the baggage-mas-
ter with it, nor that he then intended to use it upon the latter's
person at all.    It is just as reasonable to suppose that, by this
expression, he simply meant that if he had succeeded in get-
ting the pistol back into his possession he would then have used
it.    The intention to use it might have been formed during the
struggle for its possession between himself and the baggage-
master.    How he would have used the pistol does not appear.
If he had retained his hold on the pistol, perhaps he would
have attempted to shoot the baggage-master, or, to make it
stronger, suppose we say that he probably would have done so.
But the question is not what he might have done, nor what he
probably would have done; but it is, what did he actually do?
He made no attempt to shoot.    He neither cocked the pistol,
nor pointed it toward the person alleged to have been assaulted,
nor did he even raise the pistol in a position which indicated
an intention to strike him with it.    Did he, when he drew the
pistol from his pocket, intend to shoot the baggage-master, or

did he intend to strike him with the weapon, or did he merely intend to intimidate him by the show of a deadly weapon? Can it be said, beyond a reasonable doubt, that he manifestly intended to kill and that he had actually begun to execute this intention? We think not. All that can be said from the evidence is that, by drawing his pistol from his pocket, he was prepared to commit a violent injury. But it takes more than mere preparation to commit such an injury upon the person of another to amount to even an assault. *Brown* v. *State*, 95 *Ga.* 481. He did not try to use the pistol upon the person alleged to have been assaulted; and so long as he did not attempt to thus use it, it matters not why he did not make such an attempt. In Lawson *v.* State, 30 Ala. 14, it was decided that "the drawing of a pistol, without presenting or cocking it, is not an assault." We are clearly of opinion that the evidence in this case is not sufficient to support a verdict finding the accused guilty of the offense of assault with intent to murder.

*Judgment reversed. All the Justices concurring.*