GROVES *v.* THE STATE.

Mere preparatory acts for the commission of a crime, and not proximately lead-
ing to its consummation, do not constitute an attempt to commit the crime.

Argued October 21, — Decided November 12, 1902.

Indictment for attempt to commit robbery.    Before Judge
Barrow.    Chatham superior court.    June 24, 1902.

*Robert L. Colding* and *John R. Cooper,* for plaintiff in error.
*W. W. Osborne, solicitor-general,* contra.

FISH, J.    W. C. Groves, E. H. Mahlay, and Joe Waters were
indicted for an attempt to commit robbery by force upon the per-
son of Frank Deiter.    The indictment alleged that the accused "in
such attempt did do an act towards the commission of said crime,
to wit, by hiring a hack for the purpose of assisting them in the
commission of said crime, to wit, by ascertaining that said Frank
Deiter had no weapon of offense; to wit, by procuring false faces
for the purposes of a disguise; but were intercepted and prevented
from executing said crime."    Upon the trial of Groves he demurred
to the indictment, one of the grounds of demurrer being that the
acts alleged did not make out the offense charged.    The demurrer
was overruled, and the accused excepted.

We think the demurrer should have been sustained.    The in-
dictment was based upon the Penal Code, § 1040, which declares
that "If any person shall attempt to commit a crime, and in such
attempt shall do any act towards the commission of such crime,
but shall fail in the perpetration thereof, or shall be prevented or
intercepted from executing the same, he shall, in cases where no
provision is otherwise made in this Code, or by law, for the punish-
ment of such attempt, be punished as follows," etc.    In order to
constitute the offense of attempt to commit a crime, the accused
must do some act towards its *commission.*    Commission means the
act of committing, doing, or performing; the act of perpetrating.
Webster's Dict.    Mere acts of preparation, not proximately lead-
ing to the consummation of the intended crime, will not suffice to
establish an attempt to commit it.    In People *v.* Murray, 14 Cal.
159, it was held that declarations of an intent to enter into an in-
cestuous marriage, followed by elopement for the purpose, and

sending for a magistrate to solemnize the ceremony, were mere acts of preparation, and did not constitute an attempt to commit the crime. Chief Justice Field, who delivered the opinion in that case, said : " Between the preparation for the attempt and the attempt itself there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement towards the commission after the preparations are made." In U. S. *v.* Stephens, 8 Sawy. 116, the accused was charged with an attempt to introduce spirituous liquors into Alaska, in violation of an act of Congress. The evidence showed that he sent from Alaska, where he resided, to a wholesale dealer in San Francisco, an order for one hundred gallons of whisky, to be shipped to him in Alaska. It · was held that he was not guilty of an attempt to introduce the whisky into Alaska, as he had done no act to carry out his illegal intent of which the law could take cognizance, the offer to purchase the whisky being an act preparatory and indifferent in its character. " Procuring or loading a gun, or buying poison, or walking to a particular place, with intent to kill another, is not enough to make one guilty of an attempt to commit murder. The same is true of a purchase of coal oil and matches with intent to commit arson, or the procuring of metal and dies with intent to commit the offense of counterfeiting money. . . These acts are mere preparations, indifferent in their character, and do not advance the conduct of the party far enough to constitute an attempt." Clark & Marshall, Law of Crimes, § 123, and cases cited.

Mr. Clark, in his work on Criminal Law (2d ed.), 126, says: " An attempt to commit a crime is an act done with intent to commit that crime, and tending to, but falling short of, its commission," and that two of the essential elements of the offense are: " (a) The act must be such as would be proximately connected with the completed crime. (b) There must be an apparent possibility to commit the crime in the manner proposed." Again, on page 127, the author says: " To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the

circumstances of each case." Citing Com. *v.* Peaslee, 177 Mass. 267, and Com. *v.* Kennedy, 170 Mass. 18. Mr. Bishop defines an attempt to be "an intent to do a particular thing which the law, either common or statutory, has declared to be a crime, coupled with an act towards the doing, sufficient both in magnitude and in proximity to the fact intended, to be taken cognizance of by the law that does not concern itself with things trivial and small. Or, more briefly, an attempt is an intent to do a particular criminal thing, with an act towards it falling short of the thing intended." 1 Bish. New Crim. L. §728. "Mere preparation, when made at a distance from the place where the substantial offense is to be committed, is ordinarily too remote an act to satisfy the law of indictable attempt." Ib. §763. As defined by Bouvier, an attempt to commit a crime is "an endeavor to accomplish it, carried beyond mere preparation, but falling short of the ultimate design." Burrill gives substantially the same definition. We think it manifest that the hiring of the hack, the ascertaining of the fact that the intended victim had no weapons, and the procuring of the false faces for disguise, were merely preparatory acts, and not proximately leading to the consummation of the crime of robbery, and that therefore no attempt to commit that offense was sufficiently charged in the indictment.

The solicitor-general, to sustain the indictment in the present case, relied on the case of *Griffin* v. *State*, 26 *Ga.* 493. The indictment in that case charged Griffin with an attempt to burglarize a certain storehouse by unlawfully taking the impression of a key which unlocked a door to the same, and from that impression preparing a false key to fit such lock, for the purpose of unlawfully, feloniously, and fraudulently entering, and, through the agency of one Jones, to break and enter the storehouse with intent to steal. The accused demurred to the indictment, upon the ground that it did not charge any offense against him which was punishable by law, and that the facts charged against him did not constitute the offense of attempt to commit larceny from the house. The demurrer was overruled, and upon the trial the accused was convicted. He excepted to the overruling of the demurrer, and to various rulings made by the court during the trial. McDonald, J., delivered the opinion. Lumpkin, J., concurred, and Benning, J., dissented. Judge McDonald, in his opinion, said: "The object

of the act [Penal Code, § 1040] under which the plaintiff in error is indicted, is to punish intents to commit crime, if they are demonstrated by an act. The word 'attempt' ordinarily implies an act, an effort, but the General Assembly, in this statute, uses it as synonymous with 'intend,' for it declares that if a person shall attempt to commit a crime, and in *such attempt* shall *do any act* towards the commission of such offense, &c. The accused, according to the bill of indictment, conceived the purpose of perpetrating the offense, and he did an act towards the commission of it, for it was an act to take the impression of the key, and that alone is sufficient to subject him to the law; but he prepared the key, and for the object, and so the indictment alleges." The learned judge therefore held that the demurrer was properly overruled.

While Judge Lumpkin concurred in the affirmance of the judgment of the trial court, he does not in his concurring opinion refer to the question made by the demurrer, as to whether the acts charged in the indictment constituted the offense of an attempt to commit larceny from the house. He sets forth the evidence submitted upon the trial, which went far beyond the allegations in the indictment, and says: "The proof being full and complete as to the foregoing facts, was the conviction of Griffin, . . for an attempt to commit larceny from the house, legal?" He continues: "What is an attempt to commit a crime? It is an endeavor to accomplish it, but falling short of execution of the ultimate design. [Substantially the same definition given by Bouvier and Burrill.] In many cases it is difficult to determine the difference between preparations and attempts to commit crime. One may intend to commit a crime and do many things towards its commission, and yet repent of his purpose. The law gives to such an one a *locus penitentiæ*. One of the illustrations given in the books is, where a man buys poison and mixes it in the food designed for his victim, and places it on the table that he may eat. If he take back the poisoned food before it is tasted, or an opportunity is given of swallowing it, awakened by a just consideration of the enormity of the crime, he will not be guilty of an attempt to poison. All that was done would amount only to preparation. Is this Mr. Griffin's case? Did he countermand his repeated instigations to his supposed confederate urging him to the speedy execution of his diabolical scheme? Did he recall the key? On the contrary, had he

not consummated his part of the preparations — all he had to do except to share the spoils? and was he not waiting in hopeful anxiety to learn the result?" Judge Lumpkin's concurrence was based upon the theory that the evidence made out a case of attempt to commit larceny from the house. The language quoted certainly does not indicate that he subscribed to the construction placed by Judge McDonald upon the statute defining an attempt to commit a crime. Judge Benning did not concur in the affirmance of the judgment of the court below. In his opinion the trial judge erred in overruling the motion for a continuance and in refusing to give a charge requested by counsel for the accused. At most, therefore, the judgment of this court in *Griffin's* case was concurred in by only two Judges, and consequently is not binding authority. Nor has that case been followed by subsequent adjudications of this court holding that certain specified acts do not constitute an assault. As an assault is an attempt to commit a crime, that is, a violent injury upon the person of another, such later adjudications are directly in point in determining the question under consideration.

In *Brown* v. *State*, 95 *Ga.* 481, it was held: "Mere preparation to commit a violent injury upon the person of another, unaccompanied by a physical effort to do so, will not justify a conviction for an assault; and, therefore, where the evidence showed that during an altercation between the person alleged to have been assaulted, and two other persons acting in concert, one of the latter picked up a stone but made no attempt to cast it at the former, who was about twenty steps distant, neither of the two persons so acting in concert could be lawfully convicted of an assault." In *Peebles* v. *State*, 101 *Ga.* 585, it was held: "The act of maliciously putting poison into a well, with the intent that the water thereof shall be drunk by another, and that he shall in this manner be killed, does not, without more, constitute the offense of an assault with intent to murder, when the person whose death was intended never in fact drank of the water after the poison had been introduced into the same." In *Jackson* v. *State*, 103 *Ga.* 417, where the accused was charged with assault with intent to murder, it was held to be erroneous for the trial judge to refuse to give in charge a written request that "Mere preparation to commit a crime upon the happening of an event which may or may not occur, and which depends upon an act to be done or not done by the person acted

upon, is not an attempt to commit the offense of assault with intent to murder." In *Gaskin* v. *State*, 105 *Ga.* 631, it was held: "Before there can be a conviction for the offense of assault with intent to commit a rape, it must appear that the accused, with the intention of having carnal knowledge of the female forcibly and against her will, did some overt act amounting to an assault upon her. It was therefore error to charge the jury that, 'If you find that this defendant formed the intent and design in his heart to have carnal knowledge of [the female alleged to have been assaulted] forcibly and against her will, and, in the accomplishment of that evil design and intent, slipped into her room and secreted himself there, awaiting an opportune moment to carry his evil design into execution, and being detected, fled and made his escape, the court charges you that that would make such a case as that the necessary element of assault would be in it, and you would be authorized to find this defendant guilty of the offense as charged in the indictment, that of an assault with intent to rape.'" Again, in *Burton* v. *State*, 109 *Ga.* 134, it was held: "One can not legally be convicted of the offense of assault with intent to murder, alleged to have been committed with a pistol, upon proof which merely shows that he drew the weapon from his hip-pocket, and, in consequence of its being caught in the lining of his coat, did not make any actual attempt to inflict with the pistol an injury upon the person alleged to have been assaulted." On the same line, in the late case of *Penny* v. *State*, 114 *Ga.* 77, it was held that the court erred in refusing to charge, as requested in writing, that "A mere preparation to commit a violent injury upon the person of another, or a mere threat to do so, unaccompanied by physical effort to do so, will not justify a conviction for an assault. Mere words or threats, unaccompanied by some physical effort to commit a violent injury upon the person of another, will not justify a conviction for an assault." In view of what we have said, the judgment overruling the demurrer to the indictment must be

*Reversed. All the Justices concurring, except Lumpkin, P. J., absent, and Candler, J., not presiding.*