## 55231. RIDDLE v. THE STATE.

Webb, Judge.

A person commits aggravated assault when he attempts to commit a violent injury to the person of

another with a deadly weapon. Criminal Code §§ 26-1301 (a), 26-1302 (b). Danny Riddle, having been so convicted,[1] contends that the evidence was insufficient to show that he had intended to commit a violent injury upon English, the purported victim, or that the weapon used was a deadly weapon, or that he had performed any act constituting a substantial step toward commission of the battery as required by Criminal Code § 26-1001. We disagree and affirm the conviction.

There is evidence in the record which, if believed by the jury, shows an attempted work-related shooting. As his shift was nearing an end at 7:00 a.m. Riddle became involved in an altercation about overtime pay with English, his superior, growing more and more hostile and threatening to "beat his ass." As the conflict escalated English informed him that he had nothing more to say and that he would recommend to "Personnel" that he be fired for insubordination, profanity and refusing to work. English then worked in his office until about 7:30 a.m. when he went to his car in the parking lot and found Riddle waiting for him. Riddle asked for an apology, English refused, and Riddle replied that he would "get" him "because I have something for you."

Later that night as English's shift started Riddle drove up and parked two or three feet from the "big door" at the plant and had English paged to that area. English went there in company with others, whereupon Riddle got out of his car and approached the group just inside the plant. Riddle stated that he wanted to talk to English, that he had just been fired, to which English replied that he had nothing more to say. According to English, Riddle said " 'Well, god-damn-it, I have something to say to you.' [Or 'I've got something for you,' according to another witness]. And he proceeded to go back to his car and he stuck the top part of his body into the passenger's side of his car."

---

[1] The trial court withdrew from the jury a consideration of whether there was an assault under § 26-1301 (b) by placing the victim "in reasonable apprehension of immediately receiving a violent injury."

English, fearing that Riddle might be pulling a gun out of the car, ran "as fast as he could" down through the plant into the "blowing wool room." According to the eyewitnesses English's fears were well-founded because Riddle got a pump-type, 12-gauge, sawed-off shotgun from the car and "brought the weapon in. It was about hip-high. He brought the weapon up to about shoulder-high, pumped the gun, started lifting it up toward his shoulder as he was coming into the plant." An employee between Riddle and English raised his hands and said "Don't shoot that thing," and another witness went to call the sheriff.

According to an eyewitness who hunted a lot and was familiar with guns, the pumping action would "load" the gun or throw a shell into the firing chamber. This witness stated: "A. He came back in. Q. Was he walking slow? A. He came in at a medium speed. He wasn't really running and he wasn't walking either. Q. Okay. What action did he take when he first came in? This is just inside the doors. What did Mr. Riddle do? A. He came in and looked down through the plant, and as he did he pumped the gun. [English] had already went inside the blowing wool room. Q. Okay. Did he turn at all or did he just come in and look around? A. He came in and looked toward the way [English] had went. Q. Okay. After he came in and looked where [English] had gone, what did he do then? A. He saw [English] had already went inside the blowing room. He went back outside the plant, almost to the end of the blowing room, and then he turned around and came back and got in his car, and left."

1. " 'In every assault there must be an intent to injure. The test is, was there a present purpose of doing bodily injury?' " *Godboult v. State,* 38 Ga. App. 137, 138 (142 SE 704) (1928).

" 'A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.' Code Ann. § 26-605. Whether the requisite intent is manifested by the circumstances is a question for the trier of fact, and, on review, this court will not disturb the factual de-

termination unless it is contrary to the evidence and clearly erroneous." *J. A. T. v. State of Ga.,* 136 Ga. App. 540, 541 (221 SE2d 702) (1975).

We cannot say that the jury's determination here was contrary to the evidence or clearly erroneous. *Burton v. State,* 109 Ga. 134 (34 SE 286) (1899), relied upon by Riddle, does not require a different result since the crime charged there was assault with intent to murder which requires a specific intent to kill (*Wright v. State,* 168 Ga. 690, 691 (1) (148 SE 731) (1929)) whereas "[a]n intent to kill is not an element of aggravated assault with a deadly weapon." *Emmons v. State,* 142 Ga. App. 553, 554 (236 SE2d 536) (1977).

In any event that case is factually distinguishable since the pistol was caught in the lining of defendant's coat as he attempted to draw it and there was no pumping, no pointing, and no threat. But even were the instant case controlled by standards relating to assault with intent to murder we would think it more like *Williams v. State,* 125 Ga. 235 (54 SE 186) (1906) than *Burton,* supra. While we cannot say that the evidence demanded a finding that Riddle intended to shoot English, nevertheless virtually everything in the case points to that conclusion except Riddle's testimony that he had no gun at all but merely picked up a metal skid and threw it into the trash on the way to his car.

2. "[B]y definition an assault is nothing more than an attempted battery," *Scott v. State,* 141 Ga. App. 848, 849 (234 SE2d 685) (1977), and an attempt is complete "when, with intent to commit a specific crime [here a battery], he performs any act which constitutes a substantial step toward the commission of that crime." Criminal Code § 26-1001.

Riddle contends that he had not performed a "substantial step" toward committing a battery upon English, but we disagree. "[Criminal Code § 26-1001] requires that the act be a substantial step toward the commission of the crime. This is about as specific as this sort of definition can be. This language makes it clear that something more than the minimal act sometimes found to suffice for the overt act of conspiracy is required. Essentially the question is whether the accused has gone

past preparation and has begun perpetration. . ." Criminal Code Ch. 26-10, p. 130, Committee Notes.

Thus a mere threat is insufficient, *Hudson v. State,* 135 Ga. App. 739, 741 (218 SE2d 905) (1975), and even the case law prior to the new Criminal Code likewise drew distinctions between mere preparation, on the one hand, and "physical effort" to commit the battery, on the other. *Brown v. State,* 95 Ga. 481 (20 SE 495) (1894). The principle was stated in *Leverett v. State,* 20 Ga. App. 748 (1) (93 SE 232) (1917), as follows: "Acts merely preparatory for the commission of a crime, and not proximately leading to its consummation, do not constitute an attempt to commit the crime. *Groves v. State,* 116 Ga. 516 (42 SE 755, 59 L. R. A. 598). 'Attempt' is more comprehensive than 'intent,' and implies both the purpose and an actual effort to carry the purpose into execution (*Smith v. State,* 126 Ga. 544, 546 (55 SE 475)) and, in general, to constitute an attempt, there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. *Groves v. State,* supra." See also *Bell v. State,* 118 Ga. App. 291, 292 (163 SE2d 323) (1968).

Hence if the defendant makes threats and picks up rocks in his hands, but makes no attempt to throw them, assault is not shown. *Penny v. State,* 114 Ga. 77 (39 SE 871) (1901). But if the defendant goes further and draws back as if to throw them "violence has commenced and the assault is complete"; and this result obtains even if the actual throwing of the rocks is prevented by counter-menace of the victim or the interference of a third party. *Rutherford v. State,* 5 Ga. App. 482 (63 SE 570) (1908).

In the instant case the jury was authorized to find that Riddle had gone past preparation and begun perpetration when, having the motivation to injure English and having made threats to do so, he procured his gun and set off on a course intended to intercept his victim, pumping or "loading" the gun for firing, and bringing it up to his shoulder and leveling it off for firing as he advanced, only to find that his wary victim was disappearing behind another door with a lead-time of two seconds, in the estimation of one witness. In these

circumstances we believe that Riddle has "drawn back" to launch the projectile, that the violence has commenced, and that he must answer for it.

Although it is contended that there could be no assault as a matter of law because no shot was fired and the victim did, in fact, foil the plot by escaping, this was no defense prior to the new Criminal Code (*Rutherford v. State,* 5 Ga. App. 482, supra), and it is without significance now. "It is no defense to a charge of criminal attempt that the crime the accused is charged with attempting was, under the attendant circumstances, factually or legally impossible of commission if such crime could have been committed had the attendant circumstances been as the accused believed them to be." Criminal Code § 26-1002. Thus it is no defense here that the battery which the jury could find was attempted to be committed by Riddle was rendered factually impossible by English's escape.

3. Finally it is contended that there was no evidence that the shotgun was loaded and capable of being fired; but we think that the jury could legitimately infer that these matters were so because the defendant acted as if they were so. "[W]hether the instrument used constitutes a deadly weapon is properly for the jury's determination." *Quarles v. State,* 130 Ga. App. 756, 757 (204 SE2d 467) (1974). See also *Watts v. State,* 142 Ga. App. 857, 859 (237 SE2d 231) (1977), the broad implication being that a firearm is a deadly weapon per se.

*Judgment affirmed. Quillian, P. J., and McMurray, J., concur.*

Submitted February 6, 1978 — Decided February 24, 1978 — Rehearing denied March 16, 1978 — Cert. applied for.

*Jack H. Affleck, Jr.,* for appellant.

*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.

On Motion for Rehearing.

Riddle contends that "in picking and choosing among

the witnesses, as to whom was to be believed, this court has artificially affirmed an unlawful verdict." He misunderstands the scope of appellate review, however, as we pass not upon the credibility of the witnesses nor the weight of the evidence but only upon its sufficiency. *Ridley v. State,* 236 Ga. 147, 149 (223 SE2d 131) (1976).

*Motion for rehearing denied.*