## 60442. HOWELL v. THE STATE.

POPE, Judge.

Billy Howell was convicted of criminal attempt to murder his wife and sentenced to ten years. The alleged attempt was made by contracting with a person appellant believed to be an assassin-for-hire but who was actually a police officer. He appeals alleging the trial court erred by refusing to compel the state to permit pretrial hearing of taped conversations between appellant and police officers and their agents, and by failing to reveal exculpatory evidence contained in the tapes heard by the court in camera. Appellant also enumerates several instructional deficiencies and contends that the evidence did not substantiate the charge. Finding

no error, we affirm.

1. Appellant filed a pretrial motion for discovery which sought to compel disclosure of, among other things, "[a]ny tape recording or recordings of any conversation or conversations between any person, including but not limited to, any agent of the Federal, State, County or Municipal Government, and the Defendant, which are intended to be used at the trial of the case by the State of Georgia." The trial court denied appellant's motion but did conduct an in camera inspection of the tapes to determine whether they contained anything "exculpatory, that is favorable or arguably favorable to the defendant. *Rini v. State,* 235 Ga. 60 [(1) (218 SE2d 811) (1975)]." Appellant argues at great length that these tapes contained exculpatory evidence which he needed in order to prepare his defense and that the trial court erred in failing to reveal this evidence to him prior to trial. The thrust of appellant's argument is that if he had been allowed to hear the tapes before trial, he would have been able to make out an entrapment defense which he was consequently unable to do. Appellant stipulated to the accuracy and authenticity of the tapes, and all recorded conversations between him and the police officers and their agent were played at trial.

"[D]ue process requires that there be no suppression by the state of evidence in its files favorable to the accused. Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215). It was held in *Hicks v. State,* 232 Ga. 393 (207 SE2d 30) that Brady does not mean there is a burden on the state to open its file for general inspection by the defendant; that an in camera inspection of the prosecution file by the judge is sufficient, and that the appellant 'has the burden of showing how his case has been materially prejudiced . . .' " *Thornton v. State,* 139 Ga. App. 483-484 (228 SE2d 919) (1976). See *Quaid v. State,* 132 Ga. App. 478 (8) (208 SE2d 336) (1974).

Prior to his in camera inspection, the trial court was asked by appellant to be particularly attentive to any evidence of entrapment. Our review of the record supports the trial court's conclusion that there was no exculpatory evidence contained in the tapes. "[W]e find that although such evidence may have been informative and helpful, the trial court did not abuse its discretion in failing to order release of the [tapes] after an in-camera inspection, as the items 'would not exculpate appellant nor would (they) lessen his criminal liability.' *Carter v. State,* 237 Ga. [617, 619 (229 SE2d 411) (1976)]; *Watts v. State,* 141 Ga. App. 127, 128 (2) (232 SE2d 590) (1977)]." *Pless v. State,* 142 Ga. App. 594, 596-597 (236 SE2d 842) (1977). Therefore, Enumerations No. 1, 2 and 9 are without merit. Accord, *Moten v. State,* 149 Ga. App. 106 (253 SE2d 467) (1979); *Brooks v. State,* 141 Ga. App. 725 (4) (234 SE2d 541) (1977).

2. Two tapes, identified as 5 and 5A, were neither transcribed nor played at trial; they purportedly relate the sound of appellant's unanswered telephone ringing and at times the sound of unidentified persons answering and saying he was not there. Appellant contends that these tapes revealed the affirmative defenses of abandonment and entrapment.

Although these two tapes were not played at trial, there was evidence to the effect that the police officers and their agent were repeatedly unsuccessful in contacting appellant on certain occasions; therefore, the "information" contained on the tapes was merely cumulative. Additionally, the evidence showed that the police were concerned that appellant might have decided to murder his wife on his own and also that they wanted to determine whether appellant had abandoned his scheme. The trial court charged on abandonment, but we are not persuaded that the "information" contained on these tapes would have warranted a charge on entrapment. Therefore, appellant's motion to perfect the record by transcribing these tapes is denied. See generally, *Wilson v. State,* 246 Ga. 62 (1) (268 SE2d 895) (1980); *Plemons v. State,* 155 Ga. App. 447 (9) (270 SE2d 836) (1980).

3. Appellant contends that the trial court erred in failing to charge on entrapment despite his failure to request such a charge. "Entrapment exists where the idea and the intention to commit the act originate with a police officer, who, by undue persuasion and deceitful means, induces the defendant to violate the law. But there is no entrapment where the officer merely furnishes an opportunity to a defendant who is ready to commit the offense." *Hill v. State,* 225 Ga. 117, 119 (166 SE2d 338) (1969); Code § 26-905.

The record shows that appellant telephoned one F. D. on December 30, 1979 and told her that he had someone he wanted "taken care of." She told appellant that she had company at that time but would call him back later. F. D. then contacted the police and agreed, at their request, to "go along with this thing and call [appellant] back and see if he really did have any plans for doing something to somebody." The record also discloses that appellant admitted each of the factual allegations in the indictment, to wit: "On December 31, 1979 Billy Howell contacted [F. D.] at the Macon Mall Parking Lot in Macon, Bibb County, Georgia and told her he wanted his wife dead and requested that [F. D.] obtain the service of a professional killer; On or about January 4, 1980 Billy Howell procured a photograph of Barbara Howell for the purpose of identifying Barbara Howell to a professional killer; On January 10, 1980 Billy Howell agreed to hire Detective Robert Davis, a person Billy Howell believed to be a professional killer, to murder Barbara Howell for the sum of $500.00 and certain diamond rings which

were to be removed from the dead body of Barbara Howell; On January 14, 1980 Billy Howell met with Barbara Howell for the purpose of ascertaining that Barbara Howell was in possession of certain diamond rings; On January 15, 1980 at the Holiday Inn Motel at I-475 in Bibb County, Georgia, Billy Howell met with Detective Robert Davis for the purpose of discussing the murder of Barbara Howell; On January 15, 1980 Billy Howell supplied to Robert Davis a photograph and physical description of Barbara Howell; On January 15, 1980 Billy Howell supplied to Robert Davis the tag number and description of the automobile driven by Barbara Howell; On January 15, 1980 Billy Howell supplied to Robert Davis a map of the neighborhood and residence of Barbara Howell; On January 15, l980 Billy Howell paid the sum of $500.00 in cash to Robert Davis as down payment for a contract for the murder of Barbara Howell; On January 15, 1980 Billy Howell authorized and directed Robert Davis to proceed with the murder of Barbara Howell." Additionally, appellant testified that almost from the beginning he knew the individuals he had been dealing with were tied in with the police department.

"It does not constitute entrapment where a defendant approaches a police officer [or, as here, an agent-informer] with an offer to commit a crime, if that officer then plays a role in order to provide the defendant with an opportunity to commit the intended offense. [Cit.] The facts in the case relied upon by [appellant], *Jones v. State,* 101 Ga. App. 851 (4) (115 SE2d 576) (1960), are entirely different from the facts of this case." *Orkin v. State,* 236 Ga. 176, 195-196 (223 SE2d 61) (1976). Since the evidence did not show entrapment, appellant's third enumeration of error is not meritorious. *White v. State,* 230 Ga. 327 (7) (196 SE2d 849) (1973); *Jones v. State,* 154 Ga. App. 21 (2) (267 SE2d 323) (1980).

4. In his fourth enumeration of error, appellant asserts that the evidence failed to substantiate the crime of criminal attempt to commit murder. As noted in Division 3 of this opinion, appellant admitted each factual allegation set forth in the indictment. Nonetheless, he argues that these facts show mere "preparation" to commit a crime rather than an attempt.

"An attempt to commit a crime consists of three elements: first, the intent to commit the crime; second, the performance of some overt act towards the commission of the crime . . .; and third, a failure to consummate its commission." *Alexander v. State,* 66 Ga. App. 708, 711 (19 SE2d 353) (1942). Since appellant admitted he wanted his wife killed but did not succeed in doing so, we will focus our attention on whether appellant's employment of a "paid assassin" constituted an "overt act" toward the commission of her murder.

"In order to constitute the offense of attempt to commit a crime, the accused must do some act towards its *commission.* Commission means the act of committing, doing, or performing; the act of perpetrating ... Mere acts of preparation, not proximately leading to the consummation of the intended crime, will not suffice to establish an attempt to commit it." *Groves v. State,* 116 Ga. 516 (42 SE 755) (1902). The Supreme Court continued, " 'To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case.' " *Id.* at 517-518; *Bell v. State,* 118 Ga. App. 291 (163 SE2d 323) (1968). In the language of our Criminal Code, such an act must constitute "a substantial step toward the commission of that crime." Code § 26-1001.

Our research has disclosed no Georgia case which addresses itself to the factual situation found in this case. Although several other jurisdictions have considered similar situations, their decisions present two conflicting points of view. See generally Annot., 54 ALR3d 612 (1973). One view, illustrated by People v. Adami, 36 Cal. App. 3d 452 (111 Cal. Rptr. 544) (1973), holds that conduct such as appellant's in this case amounts to no more than solicitation and preparation. See Code § 26-1007. They view the subterfuge employed by the police as "the very circumstance that caused the defendant's conduct to remain within the sphere of solicitation and preparation because there was no direct movement towards the commission of the offense. The 'agent' had no intent to commit the offense and he did nothing towards the accomplishment of the desired result other than to enter into an agreement to commit the murder, an agreement the 'agent' had no intent of performing. As for the defendant, [he] committed no direct act or movement in execution of the design. [His] acts never went beyond mere preparation because they only went so far as to leave the intended assailant only in the condition to commence the first direct act toward consummation of the defendant's design. In sum, the contemplated murder would not have resulted in the usual course of natural events since neither the 'agent' nor the solicitor did any unequivocal overt act which can be said to be a commencement of the commission of the intended crime." Adami, supra at 458; State v. Davis, 319 Mo. 1222 (6 SW2d 609) (1928). Accord, Hutchinson v. State, 315 S2d 546 (Florida 1975); Gervin v. State, 212 Tenn. 653 (371 SW2d 449) (1963). The upshot of this view seems to be that since neither the defendant nor his "agent" intended to commit the murder personally, the necessary criminal intent was

lacking. Compare People v. Lanzit, 70 Cal. App. 498 (233 P 816) (1924) and Stokes v. State, 92 Miss. 415 (46 S 627) (1908) wherein the defendant accompanied his "agent" during the attempted perpetration of the crime.

The other view holds that such conduct goes beyond the sphere of mere solicitation or preparation. The defendant "not only solicited, [he] consummated the contract to that end and partly executed the same by payment of a portion of the consideration; [he] identified for the intended assassin the home and car of the intended victim, [supplied a photograph and physical description] and advised where contact could be made for the consummation of the murder. [He] did everything [he] was supposed to do to accomplish the purpose. Had it not been for the subterfuge, the intended victim would have been murdered. Under such circumstances [he] cannot escape by reason of clever, elusive distinctions between preparation, solicitation and acts committed in furtherance of the design.

"The fact that the intended accomplices were feigned does not relieve the defendant. It is not necessary that the contemplated murder be factually possible. It is sufficient if it was apparently possible to the defendant." State v. Mandel, 78 Ariz. 226, 229-230 (278 P2d 413) (1954); Braham v. State, 571 P2d 631 (Alaska 1977); State v. Gay, 4 Wash. App. 834 (486 P2d 341) (1971). See Code § 26-1002.

The "substantial step" language in our Criminal Code was adopted from the Model Penal Code, Proposed Official Draft Section 5.01 (May 4, 1962). This language "shifts the emphasis from what remains to be done . . . to what the actor *has already done.* The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial. It is expected, in the normal case, that this approach will broaden the scope of attempt liability.

"[I]t is intended that the requirement of a substantial step will result in the imposition of attempt liability only in those instances in which some firmness of criminal purpose is shown. . .

"In addition to assuring firmness of purpose, the requirement of a substantial step will remove very remote preparatory acts from the ambit of attempt liability and the relatively stringent sanctions imposed for attempts. On the other hand, by broadening liability to the extent suggested, apprehension of dangerous persons will be facilitated and law enforcement officials and others will be able to stop the criminal effort at an earlier stage — thereby minimizing the risk of substantive harm — without providing immunity to the offender." Model Penal Code, Tentative Draft No. 10, pp. 47-48 (May 6, 1960).

The evidence in this case was sufficient to support the verdict and our review of the record compels our conclusion that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accord, *Riddle v. State,* 145 Ga. App. 328 (2) (243 SE2d 607) (1978).

5. In his fifth enumeration appellant contends that the trial court erred in failing to charge the jury that the burden of proof of non-existence of affirmative defenses is on the state. However, since appellant raised no applicable objection upon inquiry by the trial court following the charge, he has waived his right to enumerate error. *White v. State,* 243 Ga. 250 (253 SE2d 694) (1979); *Davis v. State,* 156 Ga. App. 143 (273 SE2d 881) (1980).

6. The trial court gave the following instructions as part of his charge relating to the indictment: "The indictment is only the process which the law has adopted to bring the defendant to trial, containing as it does the contentions of the State. *Now, all of the contentions in this case, however, are denied by the defendant.* The defendant's plea of not guilty challenges and denies every material allegation in this indictment . . ." (Emphasis supplied.) The trial court also instructed the jury that criminal attempt "is the charge in the indictment, and if you believe from a consideration of the evidence and if you believe beyond a reasonable doubt that the defendant is guilty of this crime, then you should return a verdict of guilty. The defendant, of course, denies the crime. *He denies that he had the intent to commit the crime. He says he was coerced — if he did commit the crime, that he was coerced into it . . ."* (Emphasis supplied.)

Appellant asserts that the emphasized portions of the charge cited above were false and a misstatement of his contentions. He argues that the jury could have been confused by the court's charge since he took the stand and admitted the factual allegations of the indictment; he testified that these actions were the result of an effort to protect his mother and his friends from harm at the hands of "Candy" and/or "Meatloaf." He further argues that this amounted to the trial court's commenting on the evidence to the effect that the jury should disbelieve his testimony.

In the full charge to the jury, the trial court properly instructed on the nature and function of the indictment and appellant's plea of not guilty in a criminal trial. The court also gave careful and correct instructions regarding coercion. "It is not necessary in considering a charge to assume a possible adverse construction, but a charge that is sufficiently clear to be understood by jurors of ordinary understanding is all that is required. [Cit.] While the specific portion

of the charge of which complaint is made, when torn asunder and considered as a disjointed fragment, may be objectionable, when put together and considered as a whole, the charge is perfectly sound." *Clark v. State,* 153 Ga. App. 829, 831 (266 SE2d 577) (1980); *Tarpkin v. State,* 236 Ga. 67 (4) (222 SE2d 364) (1976); *Harper v. State,* 155 Ga. App. 764 (4) (272 SE2d 736) (1980). Enumerations No. 6 and 7 are therefore without merit.

7. The trial court explained to the jury that the offense charged in this case was criminal attempt to commit murder. The court then defined both murder and criminal attempt to commit murder. The court also charged Code § 26-906 relating to coercion as a defense to a crime "except murder." In his eighth enumeration appellant asserts that this charge was confusing to the jury because the trial court did not "clarify" whether or not the defense of coercion would be applicable to criminal attempt to commit murder if it is not applicable to the crime of murder.

"The instructions as a whole were full and fair. It is generally held that it is not usually cause for a new trial that the court gives in charge an entire statutory or Code provision where a part thereof is applicable to the case, even though a part may be inapplicable under the facts in evidence. [Cits.] It was not error to instruct the jury on the [exception to the defense of coercion.]" *Highland v. State,* 127 Ga. App. 518, 519 (1) (194 SE2d 332) (1972).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED JANUARY 30, 1981 —
REHEARING DENIED FEBRUARY 11, 1981 — 

*Fred Hasty, S. Phillip Brown,* for appellant.
*W. Donald Thompson, District Attorney, Willis B. Sparks III, Graham Thorpe, Assistant District Attorney,* for appellee.