**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 27, 2021**

# In the Court of Appeals of Georgia

A21A1789. STAPLETON v. THE STATE.

BROWN, Judge.

In this interlocutory appeal, Jackson Hathaway Stapleton seeks review of the trial court's denial of his motion for reconsideration of its order denying his general and special demurrers. We conclude that the trial court did not err in denying Stapleton's demurrers and therefore affirm.

A December 2019 indictment charged Stapleton with terroristic threats and criminal attempt to commit murder. In Count 1, the indictment charged that Stapleton, "between the 6th day of March, 2019, and the 7th day of March, 2019 . . . did with the purpose of terrorizing another to wit: [names of 52 individuals], threaten to commit a crime of violence to wit: Murder by way of a Burn/aka Kill aka/Hit List[.]"

Count 2 charged that Stapleton committed the offense of criminal attempt to commit a felony when he,

> between the 6th day of March, 2019, and the 7th day of March, 2019 . . . did knowingly and intentionally attempt to commit the crime of Murder, in violation of Code section OCGA § 16-5-1 . . . in that the said accused did perform certain acts in furtherance of said attempt to wit: did create a list of persons to be targeted, termed a "burn/aka kill/aka hit list["] with the individuals listed to wit: [names of 52 individuals], and also did create a list of items to be obtained, i.e., a list of supplies to wit: FRDLs or Woodland, P.F. Flyers, Boonie Hat, AK or SBR, Alice or other pack (TBD), Weapon Sling, Face Paint Camouflage, Water System, Knife, Variable Camouflage, Set Up Designated AO (concealed), Insect Repellent, Socks, to be used to carry out said murders; and did bring a firearm (type unknown to the Grand Jury), to said Pataula Charter School, acts which constitute a substantial step toward the commission of said crime[.]

Stapleton filed both general and special demurrers to Count 1 and Count 2. With regard to Count 1, Stapleton argued that the indictment failed to charge him with all elements of the offense of terroristic threats because it did not include the allegation that he intended or expected his alleged threat to be communicated to one or more of the 52 individuals named. In the special demurrer to Count 1, he argued that the indictment was insufficient because it lacked specificity regarding his intended means

of communication. With respect to Count 2, Stapleton argued that the indictment was deficient because the alleged acts of creating lists and bringing a firearm to the school fell short of the substantial step necessary toward the commission of the crime.

The State filed no response, and the trial court denied the demurrers. Stapleton filed a motion for reconsideration, which the trial court denied. The court certified its order for immediate review, and we granted Stapleton's application for interlocutory review. This appeal followed.

1. *General Demurrers*. Stapleton contends that both counts in the indictment are subject to a general demurrer. A general demurrer "challenges the sufficiency of the substance of the indictment." (Citation and punctuation omitted.) *Bryant v. State*, 320 Ga. App. 838, 841 (3) (740 SE2d 772) (2013). "To withstand a general demurrer, an indictment must: (1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish a violation of a criminal statute." (Citation and punctuation omitted.) *State v. Cerajewski*, 347 Ga. App. 454, 455 (1) (820 SE2d 67) (2018).

> [T]he true test of the sufficiency of an indictment to withstand a general demurrer is if all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the

3

facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good.

(Citations and punctuation omitted.) *Hinkson v. State*, 310 Ga. 388, 396 (4) (850 SE2d 41) (2020). "[A]n indictment is to be strictly construed against the State when a [general] demurrer has been filed against it." (Citation and punctuation omitted.) *Strickland v. State*, 349 Ga. App. 673, 675-676 (2) (824 SE2d 555) (2019). We review de novo the trial court's ruling on a general demurrer. *Malphurs v. State*, 336 Ga. App. 867, 868 (785 SE2d 414) (2016).

(a) *Count 1.* Stapleton argues that Count 1 of the indictment, charging terroristic threats, is deficient because it did not allege that he communicated the alleged threat or intended that it be communicated to the named victims, an essential element of the offense. The relevant criminal statute pertinently provides that "[a] person commits the offense of a terroristic threat when he or she threatens to . . . [c]ommit any crime of violence," and "[s]uch terroristic threat shall be made . . . [w]ith the purpose of terrorizing another[.]" OCGA § 16-11-37 (b) (1) (A), (b) (2) (A). "[U]nder this Code section: the State must establish two elements to sustain a conviction for making terroristic threats: (a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the

4

purpose of terrorizing the victim." (Citation and punctuation omitted.) *Bryant v. State*, 306 Ga. 687, 690 (1) (a) (832 SE2d 826) (2019).

As previously stated, Count 1 of the indictment alleged that Stapleton "did with the purpose of terrorizing [numerous individuals], threaten to commit a crime of violence to wit: Murder by way of a Burn/aka Kill aka/Hit List." Thus, the indictment clearly "recite[s] the language of the statute that sets out all the elements of the offense" of terroristic threats. *Cerajewski*, 347 Ga. App. at 455 (1). Simply put, if Stapleton admitted that he "threaten[ed] to commit a crime of violence to wit: Murder by way of a Burn/aka Kill aka/Hit List," "with the purpose of terrorizing" the victims — the precise allegations contained in Count 1 — he would be guilty of terroristic threats under OCGA §16-11-37 (b). See *State v. Horsley*, 310 Ga. App. 324, 325 (2) (714 SE2d 1) (2011) (indictment charging defendant "'with the offense of TERRORISTIC THREATS O.C.G.A. § 16-11-37, for the said accused, in the County of Fulton and State of Georgia, on the 25th day of February, 2010, DID THREATEN TO COMMIT A CRIME OF VIOLENCE, TO WIT: MURDER WITH THE PURPOSE OF TERRORIZING [the alleged victim]'" sufficient to withstand general demurrer).

Nonetheless, Stapleton asserts that Count 1 is deficient because "an essential element of any threat is communication of the threat to the person or people threatened," citing *Steplight v. State*, 301 Ga. 272 (800 SE2d 548) (2017), in which the Supreme Court reversed the defendant's *conviction* for terroristic threats because there was no evidence presented at trial that the defendant communicated his statements to the victim or intended or expected his statements to be conveyed to the victim. Id. at 275 (1). It is true that

> the crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize. That the message was not directly communicated to the victim would not alone preclude a conviction where the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim.

(Citation, punctuation, and emphasis omitted.) Id. Accord *Bryant*, 306 Ga. at 690 (1) (a). However, this requirement is implicit in the two essential elements of terroristic threats set forth in OCGA § 16-11-37: (a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim. See *Edwards v. State*, 330 Ga. App. 732, 735 (2) (a) (769 SE2d 150) (2015) ("Athough OCGA § 16-11-37 does not define 'threat,' this

6

Court has found that under the plain and ordinary meaning of the word, 'threat' refers to a communication, declaration, or expression of an intention to inflict harm or damage.") (citation and punctuation omitted). And because Count 1 recites the statutory language setting out all of the elements of the offense under OCGA § 16-11-37 (b) (1) (A) and (b) (2) (A), that count is sufficient to withstand a general demurrer.[1]

(b) *Count 2*. Stapleton contends that Count 2 of the indictment also is subject to a general demurrer. As previously stated, Count 2 alleges that Stapleton

> did knowingly and intentionally attempt to commit the crime of Murder, in violation of Code section OCGA § 16-5-1 . . . in that the said accused did perform certain acts in furtherance of said attempt to wit: did create a list of persons to be targeted, termed a "burn/aka kill/aka hit list["] with the individuals listed . . . and also did create a list of items to be obtained, i.e., a list of supplies . . . to be used to carry out said murders; and did bring a firearm . . . to said Pataula Charter School, acts which constitute a substantial step toward the commission of said crime. . . .

Thus, the State charged Stapleton with criminal attempt to commit murder by alleging that he created a "hit list," created a list of supplies to carry out the murders, and

---

[1] Whether Stapleton will ultimately be deemed to have communicated the alleged threat or intended it to be communicated will be an issue for jury resolution.

7

brought a firearm to school. Stapleton argues that these acts do not constitute substantial steps toward the commission of a crime. We disagree.

Pursuant to OCGA § 16-4-1, "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." The offense of criminal attempt "consists of three elements: first, the intent to commit the crime; second, the performance of some overt act towards the commission of the crime; and third, a failure to consummate its commission." (Citation and punctuation omitted.) *Martin-Argaw v. State*, 343 Ga. App. 864 (1) (806 SE2d 247) (2017). The statute governing the offense of murder provides: "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a).

As we have explained, "to properly charge attempt, the State must merely allege that, with an intent to commit the underlying crime, the defendant performed some overt act toward its commission." (Citation and punctuation omitted.) *Wilson v. State*, 344 Ga. App. 285, 289 (2) (810 SE2d 303) (2018).

> The fact that further steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken

8

are substantial. . . . The relevant question is whether the acts alleged in the indictment constitute a substantial step toward the commission of the crime.

(Citations and punctuation omitted.) *Dennard v. State*, 243 Ga. App. 868, 871 (1) (a) (534 SE2d 182) (2000). Accordingly, the issue is whether the acts alleged in Count 2 — creating a "hit list," creating a list of supplies to carry out the murders, and bringing a firearm to school — constitute a substantial step toward the commission of the crime of murder.

"The purpose of the 'substantial step' requirement is to impose criminal liability for attempt only in those instances in which some firmness of criminal purpose is shown and to remove very remote preparatory acts from the ambit of attempt liability." (Citation and punctuation omitted.) *Martin-Argaw*, 343 Ga. App. at 866. See also *Kohlmeier v. State*, 289 Ga. App. 709, 710 (1) (658 SE2d 261) (2008) ("[t]he 'substantial step' requirement is intended to (1) ensure firmness of the defendant's criminal intent, (2) insulate from liability very remote preparatory acts, and (3) allow for apprehension of offenders at an early stage without providing immunity for their actions") (citation and punctuation omitted). Thus,

[m]ere acts of preparation, not proximately leading to the consummation of the intended crime, will not suffice to establish an attempt to commit it. . . . To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case.

(Citations and punctuation omitted.) *Howell v. State*, 157 Ga. App. 451, 455 (4) (278 SE2d 43) (1981). Explained another way,

[b]etween the preparation for the attempt and the attempt itself there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement towards the commission after the preparations are made.

(Citation and punctuation omitted.) *Rainey v. State*, 338 Ga. App. 413, 415-416 (1) (790 SE2d 106) (2016). For instance, "[p]rocuring or loading a gun, or buying poison, or walking to a particular place, with intent to kill another, is not enough to make one guilty of an attempt to commit murder." Id., quoting *Groves v. State*, 116 Ga. 516 (42 SE 755) (1902). Finally, our inquiry focuses on what the actor has done already rather

10

than what remains to be done. *Adams v. State*, 178 Ga. App. 261, 263 (2) (b) (342 SE2d 747) (1986).

We now turn to the case at hand. Merely procuring a gun *or* walking to a particular place, with intent to kill, is insufficient to cross the line between preparation and attempt, but here we are faced with the alleged act of procuring the gun *and* bringing it to a particular place with the intent to kill. And, while making lists of intended victims and supplies, alone, might amount to mere acts of preparation, the alleged act of bringing a gun to school is "direct movement towards the commission after the preparations are made." *Rainey*, 338 Ga. App. at 416 (1). Thus, we conclude that the acts alleged in Count 2 of the indictment show the "firmness of criminal purpose" needed to satisfy the substantial step requirement. It follows that if Stapleton admitted the allegations precisely as set forth in Count 2, he would be guilty of criminal attempt to commit murder, and Count 2 is sufficient to survive Stapleton's general demurrer.

2. *Special Demurrer*. In a compound enumeration of error, Stapleton contends that the trial court should have granted his special demurrer to Counts 1 and 2 because neither count advises him of the facts underlying the respective charge with

11

enough detail to apprise him of what he must be prepared to meet at trial. We disagree.

While "[a] general demurrer challenges the sufficiency of the *substance* of the indictment, . . . a special demurrer challenges the sufficiency of the *form* of the indictment." (Citation and punctuation omitted; emphasis in original.) *Cerajewski*, 347 Ga. App. at 455 (1).

> [W]e apply different standards when we review rulings on special demurrers pretrial and post-trial. When reviewing a ruling before trial, we consider whether the indictment is perfect in form and substance, but when reviewing it after trial, we consider whether the defendant suffered actual prejudice from alleged deficiencies in the indictment.

(Citation and punctuation omitted.) *Picklesimer v. State*, 353 Ga. App. 718, 721 (1) (839 SE2d 214) (2020). An indictment is "perfect in form and substance" if it is "stated in the terms and language of the law or so plainly that the nature of the offense charged may be easily understood by the jury and the particulars are such as to enable the defendant to prepare for trial." *State v. Black*, 149 Ga. App. 389, 391 (4) (254 SE2d 506) (1979). As we have explained,

> [t]he true test of the sufficiency of an indictment to withstand a special demurrer is not whether it could have been made more definite and

12

certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow [a] defendant to prepare his defense intelligently and to protect him from double jeopardy.

(Citation and punctuation omitted.) *Coalson v. State*, 251 Ga. App. 761, 764 (2) (555 SE2d 128) (2001). We review a trial court's ruling on a special demurrer de novo. *State v. Leatherwood*, 326 Ga. App. 730 (757 SE2d 434) (2014).

With regard to Count 1, Stapleton asserts that Count 1 "leaves unanswered" to whom the alleged threat was communicated or how he intended or expected it to be conveyed to the alleged victims. Stapleton asserts that Count 2 fails to specify how he planned to murder anyone or how a list is a means to commit murder. Because of these omissions, Stapleton asserts that he cannot know what he must be prepared to defend.

While the indictment could have "been made more definite and certain," that is not the test of the sufficiency of an indictment. Indeed,

13

> [w]hile the defendant is entitled to know the particular facts constituting the alleged offense to enable him to prepare for trial, it is not necessary for the [S]tate to spell out in the indictment the evidence on which it relies for a conviction. Because the allegations of the indictment were sufficient to be easily understood by the jury, to allow [Stapleton] to prepare [his] defense, and to protect him from double jeopardy, the trial court's decision overruling his special demurrer was authorized.

(Citation and punctuation omitted.) *Scruggs v. State*, 309 Ga. App. 569, 573-574 (2) (b) (711 SE2d 86) (2011). See *State v. Tate*, 262 Ga. App. 311, 314 (2) (b) (585 SE2d 224) (2003) (indictment alleging that defendant, on a date specific, "'did threaten to commit a crime of violence, to wit: murder, with the purpose of terrorizing [the victim]'" sufficient to withstand a special demurrer).

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

ON MOTION FOR RECONSIDERATION

On motion for reconsideration, Stapleton expands his originally one-and-a-half page special demurrer argument to eleven pages. Stapleton contends, inter alia, that the indictment is too "generic" regarding the requirement that the threat be communicated, and thus does not adequately inform him of the facts constituting the offense, citing *State v. Delaby*, 298 Ga. App. 723 (681 SE2d 645) (2009). In *Delaby*, this Court affirmed the trial court's grant of the defendant's special demurrer to one of the counts in the indictment alleging that the defendant "'did knowingly use intimidation with the intent to influence the testimony of [D. K.]'" Id. at 725-726. We concluded that the "intimidation" of a witness could come in a number of ways, none of which was alleged in the indictment, and thus the use of the statutory language was generic. Id. In reaching our conclusion, we differentiated other cases in which the indictment "provided at least some factual detail to support the crime charged[.]" Id. at 726. Here, unlike in *Delaby*, Count 1 of the indictment provides at least some factual detail: "between the 6th day of March, 2019, and the 7th day of March, 2019 . . . did with the purpose of terrorizing another to wit: [names of 52 individuals],

15

threaten to commit a crime of violence to wit: Murder by way of a Burn/aka Kill aka/Hit List[.]" The motion for reconsideration is denied.