## 60888. SMITH v. THE STATE.

DEEN, Chief Judge.

The defendant was under arrest and behind the barred mesh of the visiting area where he was visited by his mother, his sister, and his girl friend. The latter was dressed in boots and pants, and as she stood next to the screen she rolled up her pants leg several times while moving her foot up and down. The sister and mother then stepped between the girl and the guard who was observing this situation. "And about two minutes later she did the same thing, but this time the [sister] didn't get close enough to the cell and I could see Kathy pass red items through the cell [wall]." The person on the other side of the cell, later identified as the defendant, then walked away. There were ten or twelve other inmates but no one else standing directly opposite the girl. The visitors were immediately told to leave, and a search of the girl was ordered. As the three women moved toward the office the suspect bumped against the sister, and the witness then saw two red hacksaw blades in the sister's hand. The cell block was searched at the same time and four more new red saw blades of the same shape were found: one over a door jam, one in the door runner, and two between the molding and the wall, all of the same name brand. The witness did not see the blades in the defendant's hand, but did see the girl pass red articles through the bars, saw him then walk quickly away, and noticed no movement of like kind on the part of any other inmate. We find the evidence sufficient to support the conclusion that the defendant's girl friend, while talking with him withdrew from her boot and passed four of the red hacksaw blades to him through the bars, and also, on being summoned for questioning, attempted to pass the remaining two to the defendant's sister.

The exact question, as to whether acquisition of hacksaw blades by a prisoner constitutes an attempt to escape, was considered in State v. Hurley, (Vt.) 64 A. 78 (1906). There the defendant while incarcerated in the local jail waited by an open window until an acquaintance threw him a bundle containing 12 hacksaw blades which he reached through the bars of the window to catch, but as he

held the package in his hands a jailer who had observed the transaction ordered him to drop it, which he did. "The exact inquiry presented by the case before us is whether the procurement of the means of committing the offense is to be treated as a preparation for the attempt or as the attempt itself . . . that act stands entirely unconnected with any further act looking to their use. It is true that the respondent procured them with the design of breaking jail. But he had not put that design into execution, and might never have done so. He had procured the means of making the attempt, but the attempt itself was still in abeyance. Its inauguration depended upon the choice of an occasion and a further resolve. That stage was never reached, and the procuring of the tools remained an isolated act. To constitute an attempt, a preparatory act of this nature must be connected with the accomplishment of the intended crime by something more than a general design."

This conclusion concurs with Georgia law on the subject of attempt. "Mere preparatory acts for the commission of a crime, and not proximately leading to its consummation, do not constitute an attempt to commit the crime." *Groves v. State,* 116 Ga. 516 (42 SE 755) (1902). This is not contradicted by *Bell v. State,* 118 Ga. App. 291 (163 SE2d 323) (1968) where it was held that the procurement of dynamite, *plus* carrying it onto the premises of another where it was intended to be set off to blow up a place of business, went beyond mere preparation and amounted to the commencement of a consummation of the offense.

While the question of where preparation ends and consummation begins can be a very close one, we are constrained by the reasoning in Hurley, supra, to hold that the defendant here, while he doubtless had an intent to use the blades to escape, had not in fact attempted to do so at the time they were discovered.

*Judgment reversed. Birdsong and Sognier, JJ., concur.*

SUBMITTED OCTOBER 2, 1980 — DECIDED NOVEMBER 20, 1980 — REHEARING DENIED DECEMBER 4, 1980 —

*Christopher A. Frazier,* for appellant.
*F. Larry Salmon, District Attorney,* for appellee.