644 S.E.2d 527 (2007)
In the Interest of B.S., a child.
No. A07A0467.
Court of Appeals of Georgia.
March 29, 2007.
*528 Jon C. Rhoades, Jerry F. Pittman, Douglasville, for appellant.
Nina M. Baker, Solicitor-General, Julian A. Mack, Assistant Solicitor-General, for appellee.
JOHNSON, Presiding Judge.
B.S. appeals from an order of the juvenile court in which he was adjudicated delinquent for criminal attempt to commit robbery, possession of a weapon during the commission of a crime, aggravated assault, possession of a firearm by a person under 18 years of age, and carrying a pistol without a license. He alleges the trial court erred in allowing into evidence a statement alleged to have been made by his brother. He also contends there was insufficient evidence to support the court's adjudication. We find no error and affirm the juvenile court's adjudication.
Viewed in a light most favorable to support the court's findings, the evidence showed that the victim was walking when B.S. asked him for a cigarette. The victim asked him to hold on a minute, but B.S. "reached at" the victim's pocket and shot the victim. The victim identified B.S. in court as the person who shot him. The victim admitted that he could not identify B.S. immediately after his surgery because he had tubes in his lungs and was on medication, but stated that there was no doubt in his mind that B.S. was the individual who shot him. A witness testified that B.S. possessed a rusty revolver about a week before the shooting. Another witness testified that he owns a black Chevy Blazer and that he was in the area at the time of the shooting. According to the witness, B.S., his cousin, asked the witness to take him "somewhere right quick" after the shooting, so the witness drove B.S. a couple of streets away and dropped him off. A number of witnesses saw the man who shot the victim get into a *529 black SUV and leave the scene of the shooting.
Kim Mathis testified that L.S., who is B.S.'s 15-year-old brother, was at her house. According to Mathis, L.S. received a text message and told her, "My brother just shot [someone]." L.S. admitted he was at Mathis' house, but denied receiving any text messages or calls from B.S. and denied telling Mathis anything about his brother shooting someone.
A search warrant executed at B.S.'s home revealed a rusty revolver between two mattresses in B.S.'s bedroom. A firearms examiner with the State Crime Lab opined that the bullet recovered from the victim had been fired from the gun found in B.S.'s bedroom. A defense expert testified that no gunshot residue was found on B.S., but he further explained that gunshot residue can be removed by washing hands, wiping them on clothing, or if the test is performed more than four hours after the gun has been fired, which it was in this case.
1. B.S. contends the trial court erred in admitting the statement allegedly made by L.S.: "My brother just shot [someone]." According to B.S., this statement was inadmissible hearsay. We disagree.
The record shows that L.S. testified that he was with Mathis at her house on the day in question. He was asked whether he remembered getting a text message from his brother, whether he got a phone call from his brother, and whether he made a comment about his brother shooting someone. L.S. responded "no" to each question. Mathis was then called as a witness. She confirmed that L.S. was with her at her house. She further testified that L.S. received a number of text messages and that L.S. told her "My brother just shot [someone]" after he received a text message.
B.S. objected on the basis that the statement was hearsay and that "I don't think [L.S.] was ever asked if he had made that statement." The trial judge overruled the objection and allowed the statement into evidence. We review the trial court's admission of the alleged hearsay statement under the clearly erroneous standard,[1] and we find no error.
It is clear from the record that L.S. was asked if he made a statement about his brother shooting someone, and Mathis was called to rebut L.S.'s denial. The state was entitled to present evidence that L.S. had made a statement inconsistent with his testimony at the hearing.[2] In addition, L.S.'s statement would also be admissible under the excited utterance exception to the hearsay rule.[3] It was a statement made by B.S.'s brother after receiving a startling text message that his brother had just shot someone. The statement was admissible.
2. B.S. contends there was insufficient evidence to support his delinquency adjudications for criminal attempt to commit robbery and aggravated assault. We again disagree.
On appeal from a criminal adjudication, we view the evidence in the light most favorable to support the trier of fact's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[4] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[5] "The verdict must be upheld if any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt."[6]
(a) B.S. contends the evidence was insufficient to support his delinquency adjudication for criminal attempt to commit robbery *530 because there was no evidence that he attempted to take the cigarettes by force, intimidation or sudden snatching. However, the evidence in the record shows that after the victim asked B.S. to "hold on" in response to B.S.'s request for a cigarette, B.S. "reached at me . . . he reached at my pocket." The victim further testified that B.S. "grabbed my jacket" prior to the shooting. "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[7] A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of force, intimidation or sudden snatching.[8] Here, a rational trier of fact was authorized to find that B.S. attempted to take the victim's cigarettes by force, intimidation or sudden snatching.
(b) B.S. also argues that the evidence was insufficient to support the finding that he was the one who shot the victim because the victim was unable to identify him after the incident and his gunshot residue test came back negative. However, the victim positively identified B.S. at the hearing, and the officer who interviewed the victim at the hospital after the shooting explained that the victim's failure to identify B.S. after the shooting was likely due to the victim's medical condition at the time.
As for the lack of gunshot residue on B.S., B.S.'s own expert testified that "[a] gunshot residue is a . . . it's like a light dusting of talcum powder, on someone's hands, so any activity will remove it. If you wipe your hands on your clothing that will remove it. If you wash your hands, it will remove it. We tell anybody; if it's been longer than four hours, do not expect a positive for gunshot residue." Here, the gunshot residue test took place approximately four and one-half hours after the shooting. B.S.'s arguments go to the weight of the evidencea question to be decided by the trier of fact and not this Court.[9] A rational trier of fact was authorized to find B.S. guilty beyond a reasonable doubt of aggravated assault.
Judgment affirmed.
PHIPPS and MIKELL, JJ., concur.
NOTES
[1] See Walthour v. State, 269 Ga. 396, 397(2), 497 S.E.2d 799 (1998).
[2] See Blount v. State, 172 Ga.App. 120, 125(10), 322 S.E.2d 323 (1984).
[3] See Walthour, supra at 397-398(2), 497 S.E.2d 799.
[4] Davis v. State, 249 Ga.App. 579, 581(1), 548 S.E.2d 678 (2001).
[5] (Citation and punctuation omitted.) Monroe v. State, 273 Ga.App. 14, 15(1), 614 S.E.2d 172 (2005).
[6] Davis, supra.
[7] OCGA § 16-4-1.
[8] OCGA § 16-8-40.
[9] See Monroe, supra.