## A09A1568. HEARD v. THE STATE.
### (681 SE2d 701)

JOHNSON, Presiding Judge.

A jury found Darius Heard guilty of criminal attempt to commit robbery, fleeing from and attempting to elude a police officer, and reckless driving. Heard appeals, alleging the evidence was insufficient to support the jury's verdict on the attempted robbery charge and the trial court erred in denying his motion to suppress. We find no error and affirm Heard's convictions.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that a deputy commander with the Troup County Sheriff's Office went to a bank in an unmarked sheriff's vehicle. While parking his vehicle, the officer noticed two men, one of whom was Heard, standing in the grassy

---

[1] *Level v. State*, 273 Ga. App. 601, 602 (1) (615 SE2d 640) (2005).

[2] (Punctuation and footnote omitted.) *In the Interest of B. S.*, 284 Ga. App. 680, 682 (2) (644 SE2d 527) (2007).

[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

area near the bank. Although it was a warm spring day, both men wore hats, one of which was pulled "further down than what somebody would wear." The men were involved in intense conversation, and when they made eye contact with the officer, "they immediately dropped their heads back down . . . but then they would look up at [him] and then look back down. They did this several times." The behavior and clothing made the officer feel uneasy because the men were not acting "as a reasonable person would do . . . under the circumstances."

The officer wore "tactical-type clothing" normally worn by law enforcement, military, or federal agents. His gun was not visible, but his badge may have been visible because it was at the front portion of his belt and his vest was open. The officer began walking toward the bank entrance at the same time the two men began walking toward the entrance from another direction. The officer stopped at the doorway to allow the men to enter before him, but, according to the officer, the men continued to look up at him before abruptly turning away. According to the officer, the men

> get to the door, and they're looking at me . . . [and] instead of them entering the door which would have been their normal course, they're looking — [t]hey're looking at me. And like I said, they've got their heads down, but I'm catching them — especially Mr. Heard right there — looking up in my direction. Abruptly they make a turn and go back away.

The men's behavior was "extremely strange," so the officer entered the bank and then immediately exited to observe the men. He noticed them standing and conversing on the northeast side of the bank. The officer returned to his vehicle and called for assistance, believing a bank robbery might occur.

The officer continued to observe the men as they began walking down the street still conversing. Trying to get a look at their faces, the officer pulled his vehicle alongside of them with his window down. However, when he got beside them, the men "immediately turned around and went back the other direction, back toward the bank." The men reached the bank and the officer observed them through his rear-view mirror. According to the officer, the men were

> looking back down at me intermittently. Between the time that they're going back up there and the time that they're at the doors, they're looking back down in my direction. They get right there to the front portion of where the doors are, or right there in close proximity. . . . They were up under the

> awning . . . [a]nd they're looking back down in my direction, looking back down, looking back down. Then all of a sudden, they decide to go back across High Street.

Wanting to keep the men in sight because of their strange behavior, the officer pulled into the parking lot of a nearby post office. He saw the men go behind a church and then saw them both in a vehicle driven by Heard that came from behind the church. Both men had removed their hats, and Heard's compatriot had his seat reclined like he was trying to conceal himself.

The officer followed the vehicle, which periodically accelerated and decelerated its speed. The passenger brought his seat up and looked directly back at the officer. He then looked forward, then back at the officer, then forward again. At this point, the vehicle picked up speed and made an abrupt turn. The vehicle then turned into a driveway. The officer pulled behind Heard's vehicle at an angle. The officer identified himself, told Heard to turn off the car, and ordered both occupants to place their hands outside the window. Heard called out that they were lost and trying to get back to LaGrange, but the officer noted that the car was still in gear. At this point, the passenger opened his door, put one leg outside the vehicle, and turned his upper torso toward the officer. Believing the passenger was trying to take a tactical advantage over him to use cover and possibly a weapon against him, the officer displayed his weapon and ordered the passenger to get back into the vehicle. The passenger complied and told Heard, "Go, man, go."

Heard accelerated at a high rate of speed, jumping a drainage ditch to leave the driveway. The officer pursued. As they went over a hill, the officer lost sight of the vehicle for a moment and then saw the passenger's arm come back into the vehicle and the door close. Heard traveled through a stop sign without even braking and passed at least two cars in a no-passing zone. A second officer in a marked patrol unit with his blue lights and siren activated began pursuing Heard, who continued to elude officers. At times Heard's vehicle exceeded 100 miles per hour in 35 and 45 mile per hour speed zones, passed another car on the right-hand side, and went through a red light. After approximately two miles, the vehicle came to a stop and Heard and his passenger were taken into custody.

A search of the vehicle revealed a hat, a ski mask, two pairs of gloves, a blue bandanna, and two pairs of sunglasses, all located in the front passenger side of the vehicle. Officers also found a composition notebook with a few missing sheets. Hidden between three cups stacked in one another in the center console cup holder was a crumpled note that appeared to have come from the composition notebook. The note read, "This is a robbery so don't panic

because if you do you would put," and then ends. Another sheet of paper had the word "This" written on it.

A bank teller testified that she noticed the two men walk around the bank twice, and she alerted her supervisor. One of the men even looked inside the back door and stood there for a few minutes. The teller went to the door to see if she could help them, but the men turned and walked off once she made eye contact with them. She later saw them talking in the grassy area and saw the officer pull up to the bank. The teller identified Heard in court as one of the two men she noticed at the bank.

Heard contends the evidence was insufficient to support his conviction for criminal attempt because he abandoned his criminal purpose. We disagree. When a person's conduct would otherwise constitute an attempt to commit a crime, "it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose."[4] However, a renunciation of criminal purpose is not voluntary and complete if it results from "[a] belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose."[5]

Here, Heard contends he abandoned his criminal purpose. However, the evidence shows that he repeatedly walked around the bank, made at least one move to enter the bank, and only abandoned his decision to enter the bank after repeatedly making eye contact with the officer. Heard "made no effort to abandon the robbery until the fortuitous arrival of the police."[6]

While Heard argues he did not know an officer was present because the officer arrived in an unmarked car and did not wear a police uniform, there is evidence that the officer had clothing on which is normally worn by law enforcement individuals and that his badge was possibly visible. Moreover, regardless if Heard knew the individual he and his co-defendant continued to look at was an officer, the fact remains that Heard was acutely aware of the individual's presence, and a reasonable jury could conclude that Heard believed the individual's presence increased the probability of his apprehension.

We also reject Heard's argument that his actions constituted

---

[4] OCGA § 16-4-5 (a).

[5] OCGA § 16-4-5 (b) (1).

[6] *Level*, supra at 604 (1).

mere preparation to commit a crime.

> To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial.[7]

Here, the evidence supports the jury's conclusion that Heard took substantial steps toward the commission of robbery. He wore a hat pulled abnormally low over his head, he scouted the bank, he moved to enter the bank but diverted his steps at the last minute, and a note indicating a bank robbery was going to occur was found in the car Heard drove. The fact that further steps needed to be taken before the crime could be completed does not preclude a finding that Heard took a substantial step toward committing a robbery. It was within the jury's province to conclude that but for the presence of the officer, Heard would have committed a bank robbery.

2. Heard contends the trial court erred in denying his motion to suppress all evidence discovered in his vehicle, including the clothing, robbery note, and composition notebook. When reviewing a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment of the trial court, and the court's findings on disputed facts and witness credibility will be adopted unless they are clearly erroneous.[8] We find no such error in the present case.

Regardless of the propriety of the officer's initial basis for stopping Heard's vehicle, the evidence is undisputed that Heard attempted to flee from the officer during the course of the stop. Heard's action in attempting to flee or elude a police officer "purged any taint arising from the allegedly illegal stop and provided a legitimate basis for discovery of the evidence" in the car.[9] Since Heard fled from police, a separate crime occurred, and the search of the vehicle that followed the seizure of Heard and his co-defendant

---

[7] (Punctuation and footnote omitted.) *New v. State*, 270 Ga. App. 341, 343 (1) (606 SE2d 865) (2004); *Evans v. State*, 216 Ga. App. 21, 22 (1) (453 SE2d 100) (1995).

[8] *Redd v. State*, 229 Ga. App. 364, 365 (494 SE2d 31) (1997).

[9] *Prather v. State*, 279 Ga. App. 873, 876 (1) (633 SE2d 46) (2006).

was legal as a search incident to a lawful arrest.[10] The trial court did not err in denying Heard's motion to suppress.

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED JULY 13, 2009.

*Jeffrey B. Shattuck*, for appellant.

*Peter J. Skandalakis, District Attorney, Lynda S. Caldwell, Assistant District Attorney*, for appellee.

---

[10] See *Hurley v. State*, 287 Ga. App. 482, 483 (651 SE2d 748) (2007).