In the Supreme Court of Georgia

Decided: June 16, 2014

S14A0111.  OLIPHANT v. THE STATE.

HUNSTEIN, Justice.

Appellant Marcus Tyrone Oliphant was convicted of malice murder and 15 other offenses in connection with a July 2006 armed robbery and shooting at a mobile home park in Carrollton, Georgia.  Oliphant now challenges his convictions and sentences, claiming that the evidence was insufficient on particular counts; that trial counsel rendered ineffective assistance; that the trial court imposed an illegal sentence on one count; and that the trial court failed to merge or vacate certain convictions for sentencing purposes.  Though we find that the evidence was sufficient and that trial counsel did not render deficient performance, we agree that Oliphant was improperly sentenced in various respects, and we therefore vacate certain of his sentences, as set forth in greater specificity below.[1]

_____

[1]The crimes occurred on July 19, 2006.  In October 2006, a Carroll County grand jury handed down a multi-count indictment against Oliphant and eight

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. On the evening of July 19, 2006, a group of young men attacked and robbed Pedro Espinosa at gunpoint outside his trailer in the Elizabeth Village Mobile Home Park in Carrollton. The assailants approached Pedro, who was sitting outside his trailer, and one of them asked for a cigarette. Pedro rose and walked toward his trailer to retrieve a cigarette from

others, charging all nine co-indictees with the malice murder, felony murder, and aggravated assault of Paola Vergara Cabanas; one count of armed robbery and three counts of aggravated assault against Pedro Espinosa; one count each of aggravated assault and first degree child cruelty as against Sabrina, Pablo, and Valerie Monsivais; theft by receiving; and possession of a gun during the commission of a crime. Oliphant and seven of the other eight men were also charged with possession of a pistol by a person under the age of 18. At the conclusion of a jury trial held October 23-25, 2007, Oliphant was convicted on 16 of the 17 counts for which he was indicted; the theft by receiving count was nolle prossed. He was sentenced to two concurrent life terms for malice murder and felony murder, respectively, plus a consecutive life term for armed robbery; a concurrent 20-year term for the aggravated assault of Paola Cabanas; two concurrent 20-year terms for the two aggravated assaults on Pedro Espinosa; five consecutive 20-year terms for the remaining five aggravated assault counts; one consecutive and two concurrent 20-year terms for the child cruelty counts; and two consecutive five-year terms for each of the firearm possession counts. In total, Oliphant was sentenced to two consecutive life terms plus 130 years to serve. Oliphant filed a motion for new trial in November 2007, and no further action was taken in the case until new appellate counsel entered an appearance in February 2010. The new trial motion was amended and supplemented on three occasions, and, following a hearing on July 2, 2013, the motion was denied on July 18, 2013. Oliphant filed a timely notice of appeal on August 16, 2013. The case was docketed to the January 2014 term of this Court and was thereafter submitted for decision on the briefs.

inside, when he was grabbed from behind and put in a chokehold. Some of the men began beating him, one of the others stuck a gun in his mouth, and another held a gun to his temple, as they demanded that Pedro give them his money. When Pedro responded that he had none, the men frisked him and took his cell phone from his pocket. At the time, Espinosa's brother, Jorge, was inside the trailer with his wife, Paola Cabanas, and three children whom they were babysitting. Responding to the noise outside, Jorge opened the door, saw what was happening, and shut the door. The men threw Pedro aside, one fired two shots at him, and the men began firing at the trailer, then fled. One of the shots struck Jorge in the arm, another hit and killed Paola, and a third traversed both legs of one of the children, 10-year-old Sabrina Monsivais. After the men had run away, one returned briefly and shot at Pedro again, striking him in the leg.

Oliphant, who was 17 years old at the time of the crimes, admitted to having accompanied several friends to Elizabeth Village on the night of July 19. In a police interview conducted two days after the crimes, Oliphant told investigators that, on that night, he was sitting in a car parked at Elizabeth Village with Chade Ackey, Cody Buchanan, and Randall Laye. Oliphant received a phone call on Ackey's cell phone from Aerius Potts, who wanted to

3

borrow Oliphant's gun. Potts and accomplices LaBryan Lytle,[2] Christopher Coleman, Deonta Holland, and Varion Shell had decided to rob someone that night, and they arranged to meet Oliphant's group at Elizabeth Village. The two groups met up, and Oliphant gave Potts his nine millimeter pistol. Eight of the nine men, several of whom were armed with guns, then proceeded to walk through the trailer park, while the ninth remained in his car. After an unsuccessful attempt to enter a particular trailer, they came upon Pedro, and the attack unfolded. All nine men fled after the shooting.

Later that evening, Coleman drove Oliphant, Potts, and Ackey out of Carrollton to some unfamiliar farmland, where Potts disposed of Oliphant's pistol and a second gun used in the crimes by flinging them out of the car window. Investigators eventually recovered both of these guns, as well as a .380 caliber semi-automatic handgun, which Coleman admitted to using in the crimes. Four cartridge cases and a bullet found at the scene, as well as the bullet recovered from Paola's body, were matched by firearms experts with Oliphant's nine millimeter pistol and Coleman's .380 caliber gun.

---

[2]We have previously affirmed the convictions and sentences of Lytle, who was tried separately from Oliphant. See Lytle v. State, 290 Ga. 177 (718 SE2d 296) (2011).

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Oliphant was guilty of the crimes of which he was convicted.  Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).  While there is no evidence that Oliphant fired any of the weapons used in the shooting, there was evidence that Oliphant supplied one of the weapons used in the crimes with the knowledge that it was to be used to commit armed robbery; was present during the commission of the crimes; fled the scene immediately thereafter; and accompanied several of his accomplices to dispose of two of the weapons used in the crimes.  Thus, there was ample evidence to inculpate Oliphant as a party to the crimes.  See OCGA § 16-2-20 (persons "concerned in the commission of a crime," by way of intentionally aiding and abetting or intentionally advising, encouraging or counseling another to commit such crime, may be charged with and convicted of commission of the crime); see also Hassel v. State, __ Ga. __ (1) (755 SE2d 134) (2014).

In addition, we reject Oliphant's argument that his first-degree cruelty to children convictions cannot be sustained because there was insufficient evidence of intent.  OCGA § 16-5-70 (b) defines first-degree child cruelty as "maliciously

caus[ing] a child under the age of 18 cruel or excessive physical or mental pain."

Contrary to Oliphant's assertion, the statute does not require evidence that the defendant had any specific awareness of a child's presence when committing the act in question. Rather, the statute requires only that the defendant commit an act with malice and, in so doing, cause a child the requisite pain. Regarding the intent component, we have stated that

> it must be established that the mental state of the defendant has the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm, or [that] there is the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm might result.

Banta v. State, 282 Ga. 392, 397 (5) (651 SE2d 21) (2007). Here, Oliphant was an accomplice in the malice murder of Paola, which was witnessed by all three children, who were under her care at the time. All three children testified at trial to their fright and angst during and immediately after the shooting. The evidence was thus sufficient to sustain the first-degree child cruelty convictions.

2. Oliphant next contends his trial counsel rendered ineffective assistance by failing to object to the admission of prejudicial evidence on two occasions. To establish ineffective assistance of counsel, a defendant must show that his

6

trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a) First, Oliphant contends that trial counsel should have objected and moved to redact a portion of his videotaped police interview, in which one of the officers explained why he could be charged as a party to the crime. Oliphant claims the officer's statements constituted an improper opinion on the ultimate issue of Oliphant's guilt as an accomplice. We disagree, because here, the officer was clearly not offering opinion testimony on the ultimate issue but was merely informing Oliphant as to the probable cause for his arrest. Counsel's failure to object to this brief portion of the interview does not constitute deficient performance. See Wesley v. State, 286 Ga. at 356 (failure to make meritless objection does not constitute deficient performance).

(b) Next, Oliphant contends that trial counsel should have objected when

7

the prosecutor adduced testimony that the City of Carrollton Police Department, which investigated the case, was a "certified police department" that had recently received an award for having the most training hours per officer of all the State's police departments. Even assuming, as Oliphant argues, that trial counsel should have objected to this testimony as improperly bolstering the credibility of several Carrollton police officers who testified at trial, we find little probability that this testimony, spanning less than two of the more than 300 pages of trial testimony in this case, had any effect on the result of the trial. There being no prejudice, Oliphant's ineffectiveness claim fails.

3. We agree with Oliphant that the trial court improperly sentenced him to a felony-level sentence of five years on his conviction for misdemeanor possession of a pistol by a person under the age of 18. See OCGA § 16-11-132 (b) (first conviction thereunder is misdemeanor punishable by imprisonment for not more than 12 months). Oliphant's sentence on Count 17 of the indictment must, therefore, be vacated and the case remanded for resentencing on this count.

4. We also agree with Oliphant's contentions regarding the merger of certain of his convictions.

(a) Oliphant was convicted of and sentenced for the malice murder,

8

felony murder, and aggravated assault of Paola. Given the malice murder conviction, the felony murder conviction should have stood vacated by operation of law, and the trial court thus erred in imposing a separate sentence on the felony murder count. See Lucky v. State, 286 Ga. 478 (2) (69 SE2d 825) (2010) (when jury returns guilty verdicts on malice and felony murder as to same victim, felony murder conviction is "surplusage" and stands vacated by operation of law). In addition, the aggravated assault on Paola, predicated on the same shooting that caused her death, should have merged, as a lesser included offense, into the malice murder conviction. Id. at 481; see also Vergara v. State, 287 Ga. 194 (1) (b) (695 SE2d 215) (2010). Accordingly, Oliphant's convictions and sentences on Count 2 (felony murder) and Count 3 (aggravated assault against Paola) must be vacated.

(b) Oliphant was also convicted of and sentenced on four different counts as to Pedro: one for armed robbery (Count 4) and three for aggravated assault (Counts 5, 6, and 11). Count 5 alleged aggravated assault by putting a handgun in Pedro's mouth; Count 6 alleged aggravated assault by shooting Pedro with a handgun; and Count 11 alleged aggravated assault with intent to rob by pointing a handgun at Pedro and demanding money. Oliphant contends that the aggravated assaults charged in Counts 5 and 11 should merge into the armed

9

robbery conviction. We agree.

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

(Citation and punctuation omitted.) Drinkard v. Walker, 281 Ga. 211, 215 (636 SE2d 530) (2006). Under this test, the conviction on Count 11, aggravated assault with intent to rob, clearly should have merged into the armed robbery conviction. See Lucky v. State, 286 Ga. at 481-482 (comparing elements of armed robbery with those of aggravated assault with intent to rob and concluding that the latter was a lesser included offense of the former). As to Count 5, the same result obtains, because the aggravated assault with a deadly weapon as alleged here (i.e., by putting a gun in Pedro's mouth) does not require proof of any fact in addition to those necessary to prove the armed robbery. See Bradley v. State, 292 Ga. 607 (1) (c) (740 SE2d 100) (2013); Long v. State, 287 Ga. 886 (2) (700 SE2d 399) (2010).

Still intact, however, are the conviction and sentence on the aggravated assault in Count 6, which charged Oliphant with aggravated assault by shooting Pedro. The evidence showed that, after the armed robbery and initial shooting,

the assailants ran away, but one then returned briefly and shot Pedro in the leg. Because this subsequent shooting occurred after the initial criminal transaction was completed, the aggravated assault conviction arising therefrom does not merge with the other convictions. Thomas v. State, 289 Ga. 877, 880 (3) (717 SE2d 187) (2011) (declining to merge aggravated assault with armed robbery where the assault was committed after the armed robbery had been completed).

For the foregoing reasons, the convictions and sentences on Counts 2, 3, 5, and 11 must be vacated, and Oliphant's sentence on Count 17 must also be vacated. In all other respects, the judgment is affirmed.

Judgment affirmed in part and vacated in part and case remanded for resentencing. All the Justices concur.