**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 13, 2016**

# In the Court of Appeals of Georgia

A16A0675. RAINEY v. THE STATE.

RICKMAN, Judge.

Henry Rainey appeals his conviction for criminal attempt to commit armed robbery. Rainey contends, among other things, that the evidence was insufficient to support his conviction. We agree and reverse.

On appeal, "[w]e view the evidence . . . in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility but only determine if the evidence is sufficient to sustain the convictions." (Citation omitted.) *Hill v. State*, 243 Ga. App. 614 (533 SE2d 779) (2000); see *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the evidence showed that an employee of an auto care store noticed a vehicle with an obscured license plate parked in an unusual location in the parking lot. The employee observed Rainey inside the vehicle talking on his cell phone and wearing a surgical mask. The employee watched Rainey exit his vehicle wearing the mask, a hooded sweatshirt with the hood pulled up, and a hat. He then observed Rainey walking a short distance towards a CVS Pharmacy, which was also near two banks. A manager of the auto care store[1] called 911 and reported his concern that Rainey may rob the store.[2]

A CVS employee saw Rainey come into the store. He testified that Rainey walked around the store for four to five minutes and then inquired about the price of cigarettes, which the employee felt was "strange" because the prices were listed, but also testified that he was never in any fear or danger. The employee testified that Rainey entered the CVS store twice.

A sergeant with the Cherokee County Sheriff's Office responded to the 911 call and went to the location of Rainey's vehicle. The sergeant saw Rainey walking

[1] Neither the auto care store nor any employee thereof are named victims in the indictment.

[2] One employee purportedly retrieved his weapon because the situation made him feel "uncomfortable."

towards his vehicle but did not observe him wearing a mask. The sergeant testified that Rainey appeared to throw something inside his vehicle, although he admittedly could not see exactly what Rainey was doing.

Upon questioning from the sergeant, Rainey stated that he was waiting for his daughter. The sergeant observed that Rainey's license plate was obscured by an insurance bill secured by medical tape, which Rainey speculated may have been taped onto his car by his daughter to remind him to pay his bill. Rainey's daughter testified that she did not tape the insurance bill on the license plate of the vehicle and that she was not planning on meeting her father.

As the sergeant was questioning him, Rainey offered for the sergeant to "look inside if you want," to which the sergeant followed up with, "[y]ou don't mind if I look throughout the vehicle?" and Rainey responded, "No." The sergeant found a surgical mask, medical tape, and a police scanner in the vehicle. He also located a checkbook on the floor of the vehicle, leaning against the driver's seat. After searching inside the checkbook, the officer found a note reading, "I have a gun and there is one outside listening to a police scanner so no alarm put $2000.00 in the check book and be fast." A second note was found written on the plastic sleeve of the checkbook, which was essentially the same as the first except that it omitted the

3

language referencing the police scanner. A deputy on the scene thereafter conducted a patdown search of Rainey, but no weapons were located on him or in his vehicle.

The grand jury returned an indictment charging Rainey with criminal attempt to commit armed robbery and criminal attempt to commit robbery. After a jury trial, Rainey was found guilty of criminal attempt to commit armed robbery. It is from this conviction that Rainey now appeals.

1. Rainey contends that the evidence was insufficient to support his conviction. Specifically, Rainey argues that the evidence showed mere preparation and not a substantial step towards the commission of an armed robbery.

Pursuant to OCGA § 16-4-1, "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." And OCGA § 16-8-41 (a) provides,

> A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. The offense of robbery by intimidation shall be a lesser included offense in the offense of armed robbery.

4

Under Georgia law, "[i]n order to constitute the offense of attempt to commit a crime, the accused must do some act toward its commission." (Punctuation omitted.) *Groves v. State*, 116 Ga. 516 (42 SE 755) (1902); see OCGA § 16-4-1.

> 'Commission' means the act of committing, doing, or performing the act of perpetrating . . . Mere acts of preparation, not proximately leading to the consummation of the intended crime, will not suffice to establish an attempt to commit it. . . . Between the preparation for the attempt, and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense. The attempt is the direct movement towards the commission after the preparations are made. . . . Procuring or loading a gun, or buying poison, or walking to a particular place, with intent to kill another, is not enough to make one guilty of an attempt to commit murder. The same is true of a purchase of coal oil and matches with intent to commit arson, or the procuring of metal and dies with intent to commit the offense of counterfeiting money. These acts are mere preparations, indifferent in their character, and do not advance the conduct of the party far enough to constitute an attempt.

(Citations and punctuation omitted.) *Groves*, 116 Ga. at 516-517.

In this case, the evidence presented supports a finding that Rainey performed certain acts in preparation for an armed robbery. Arguably, it may even support a

5

conviction of criminal attempt to commit robbery.[3] That is not the same, however, as supporting a finding that Rainey took a substantial step towards the commission of an armed robbery. See id.

Rainey's actions in obscuring his license plate and being in possession of the notes, surgical mask, and police scanner –in the absence of any evidence that he was in possession of a weapon or device having the appearance of a weapon, and in the absence of evidence that he showed anyone the notes –were merely preparatory acts and do not amount to an attempt to commit the crime of armed robbery. See *Groves*, 116 Ga. at 518 ("We think it manifest that the hiring of the hack, the ascertaining of the fact that the intended victim had no weapons, and the procuring of the false faces for disguise, were merely preparatory acts, and not proximately leading to the consummation of the crime of robbery[.]"); see also *Thurman v. State*, 295 Ga. App. 616, 619 (1) (673 SE2d 1) (2008) (physical precedent only) (defendants' possession of materials used in the manufacture of methamphetamine constituted mere preparation to commit the crime); *Smith v. State*, 156 Ga. App. 695, 696 (275 SE2d 689) (1980) (evidence that the defendant's girlfriend passed hacksaw blades to him

---

[3] See OCGA § 16-8-40 (a); see also *Heard v. State*, 299 Ga. App. 44, 48 (1) (681 SE2d 701) (2009).

6

while he was in jail was insufficient to sustain his conviction for attempted escape because while the defendant most likely had an intent to use the blades to escape he had not yet attempted to do so). Compare *New v. State*, 270 Ga. App. 341, 343-344 (1) (606 SE2d 865) (2004) (evidence was sufficient to support defendant's conviction for criminal attempt to commit armed robbery where defendant went to a restaurant armed with a BB handgun which resembled a semiautomatic pistol, parked his car in several different locations in the parking lot, watched a group of people standing outside of the restaurant, wore a mask covering his face, and drew his gun when confronted by a police officer).

We find the following cases relied upon by the dissent to be inapposite to the facts before us: *Heard v. State*, 299 Ga. App. 44, 48 (1) (681 SE2d 701) (2009) (affirming a conviction for criminal attempt to commit robbery–not attempt to commit armed robbery–based upon the defendant suspiciously walking around a bank, moving to enter the bank but abandoning his actions after making eye contact with a police officer, fleeing from the police officer, and possessing in his vehicle a note indicating that he was going to commit a robbery); *Evans v. State*, 216 Ga. App. 21 (1) (453 SE2d 100) (1995) (affirming a conviction for criminal attempt to enter an automobile where the defendants discussed the theft of a car stereo, possessed the

tools to commit the theft, and drove to a parking lot to commit the theft); *Adams v. State*, 178 Ga. App. 261, 262-264 (2) (a) and (b) (342 SE2d 747) (1986) (affirming a criminal attempt to commit armed robbery conviction where the defendants previously discussed committing the armed robbery, drove to a hotel to commit the armed robbery, agreed to rob someone when they arrived at the hotel, and were armed with handguns); *New*, 270 Ga. App. at 343-344 (1) (discussed supra).

While we agree with the dissent, citing *Prins v. State*, 246 Ga. App. 585 (1) (539 SE2d 236) (2000),[4] that the presence of a weapon is not required in order to sustain a conviction of armed robbery, we disagree that, in this case, the presence of a weapon could be inferred. In *Prins*, the defendant handed a bank teller a note demanding that she put money in a bag or he would kill her, all while concealing one of his hands. Id. at 586-587 (1). In affirming Prins' conviction, this Court held that, "threatening to shoot a victim while keeping a hand concealed shows the weapon element of armed robbery." Id. at 587 (1). In this case, on the other hand, there is no evidence that Rainey gave the notes to anyone or concealed his hands in any way as if to hide a weapon. Furthermore, although certain auto care store employees were

---

[4] Overruled in part on other grounds by *Miller v. State*, 285 Ga. 285, 287 n.1 (676 SE2d 173) (2009).

alarmed by Rainey's conduct, the CVS employee testified that he was never in fear

of Rainey or otherwise felt as though he was in danger. And as noted above, neither

the auto care shop nor any of its employees were named victims in the indictment.[5]

Accordingly, we conclude there was insufficient evidence to support the jury's

verdict of guilty on the charge of criminal attempt to commit armed robbery.[6] See

*Groves*, 116 Ga. at 518; see also *Thurman*, 295 Ga. App. at 619 (1) (physical

precedent only); *Smith*, 156 Ga. App. at 696.

2. Because of our ruling in Division 1, we need not address Rainey's remaining

arguments.[7]

---

[5] CVS is a named victim in the indictment.

[6] For reasons unexplained by the record, Rainey filed a motion for new trial on September 27, 2012 but the hearing on his motion was not held until August 11, 2015.

[7] Specifically, we need not address Rainey's argument that his trial counsel rendered ineffective assistance by failing to move to suppress the physical evidence found in Rainey's vehicle. We note, however, that the sergeant's search of the interior of Rainey's checkbook likely exceeded the scope of Rainey's consent to "look" inside and/or throughout the vehicle. See *State v. Corley*, 201 Ga. App. 320, 323 (411 SE2d 324) (1991) (officer exceeded the scope of consent to "look inside" the suspect's truck when he opened a drawstring bag in the front seat); *State v. Diaz*, 191 Ga. App. 830, 831 (2) (383 SE2d 195) (1989) (officer exceeded defendant's consent to "look inside" his vehicle when he searched vehicle and opened a shaving kit); see also *State v. Neese*, 302 Ga. App. 829, 830-831 (691 SE2d 883) (2010) (physical precedent only) (officer expanded the scope of consent to "check" a backpack when the officer

*Judgment reversed. Barnes, P. J., Miller, P. J., Ellington, P. J., McFadden and Mercier, JJ., concur. McMillian, J., concurs fully and in the judgment only as to FN 7. Boggs and Branch, JJ., dissent.*

---

unscrewed a flashlight located inside); *Amato v. State*, 193 Ga. App. 459, 460 (1) (388 SE2d 54) (1989) (consent to look inside vehicle did not extend to removal of vent cover on the door frame). And because the evidence was insufficient to sustain Rainey's conviction on criminal attempt to commit armed robbery, Rainey could not be retried on the lesser included offense of criminal attempt to commit robbery. See *Levin v. State*, 334 Ga. App. 71, 75 (2) (778 SE2d 238) (2015) ("[W]here a defendant is tried and convicted of a crime, and that conviction is reversed due to insufficient evidence, procedural double jeopardy bars re-prosecution for that same crime and any lesser included crime.") (citation and punctuation omitted.)

A16A0675. RAINEY v. THE STATE.

B OGGS, Judge, dissenting.

Because the evidence was sufficient to permit the jury to conclude that Rainey took substantial steps towards the commission of an armed robbery, and because no other enumeration of error warrants reversal, I respectfully dissent.

1. Rainey first attracted the attention of a mechanic at the auto shop and his foreman because he parked in a remote area of the business' parking lot, near the adjacent drug store. After moving to a vantage point behind tinted glass windows, they were able to see that Rainey's license plate was covered up with a piece of paper, that he appeared to be wearing a mask, and that he was behaving in a "suspicious" manner, talking on his cell phone and constantly "looking around, looking over his shoulder seeing if there was anybody there." When Rainey got out of his car, they saw that he was indeed wearing a mask, as well as a hooded sweatshirt with the hood up and a hat. Rainey began pacing and "walking aimlessly," "acting erratically," walking through bushes up a slope and around the back of the drug store.[1] Both the mechanic

---

[1]Rainey entered the drug store several times and asked odd questions of the cashier. The manager testified that the store had no record of Rainey as a pharmacy customer.

and foreman testified that they believed Rainey might be trying to rob the shop; one of the employees called the police and the foreman armed himself, believing that a robbery was imminent.

The first sheriff's deputy to arrive entered the auto shop and spoke with the manager. He and the second deputy, who arrived a few minutes later, entered the drug store and found no person wearing a mask, but saw Rainey standing outside the front door. Rainey began to walk "in a faster way than a normal person would walk," through shrubbery and down an embankment towards the auto shop. When Rainey reached his car, the first deputy approached him and observed him "throw or toss something inside of the vehicle" through the open window.

The deputies engaged Rainey in conversation and he told them that he was waiting for his daughter; she, however, testified and denied this. When his attention was called to the insurance bill taped over his license plate, Rainey stated that his daughter must have done it to remind him to pay the bill; she denied this as well. Rainey then invited the deputies to "look inside if you want," and the first deputy responded, "You don't mind if I look throughout the vehicle?" and Rainey answered, "No." In addition to a working police scanner concealed by a towel on Rainey's car seat, a roll of tape which matched that used to cover the license plate, and a mask

2

"kind of between the passenger seat and the center console," the deputy discovered a checkbook lying on the floor, leaning up against the driver's seat. It contained not one but two robbery notes, one written on the outside cover of the checkbook register and one on the clear plastic sleeve of the checkbook. Both notes stated that Rainey had a gun, and one further stated, "there is one outside listening to a police scanner."

This evidence authorized the jury to conclude that Rainey's conduct went beyond mere preparation and constituted a substantial step towards committing an armed robbery.

> To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial.

(Citations, punctuation, and footnote omitted.) *Heard v. State*, 299 Ga. App. 44, 48 (1) (681 SE2d 701) (2009). In *Heard*, we affirmed a conviction for attempted robbery after a sheriff's deputy noticed Heard and another man standing outside a bank and observed that both were wearing hats although it was a warm day, and Heard had his

hat pulled down "abnormally low," id. at 48 (1), and that both avoided eye contact. Id. at 45. When the officer attempted to speak with Heard and his companion, they avoided him and then fled in an vehicle but were quickly apprehended. Id. at 45-46 (1). A search of the vehicle revealed a hat, a ski mask, gloves, a bandanna, sunglasses, and a robbery note. Id. at 46-47 (1). We rejected Heard's argument that his conduct constituted mere preparation, observing:

> Here, the evidence supports the jury's conclusion that Heard took substantial steps toward the commission of robbery. He wore a hat pulled abnormally low over his head, he scouted the bank, he moved to enter the bank but diverted his steps at the last minute, and a note indicating a bank robbery was going to occur was found in the car Heard drove. The fact that further steps needed to be taken before the crime could be completed does not preclude a finding that Heard took a substantial step toward committing a robbery. It was within the jury's province to conclude that but for the presence of the officer, Heard would have committed a bank robbery.

Id. at 48 (1). Similarly, in *Evans v. State*, 216 Ga. App. 21 (1) (453 SE2d 100) (1995), the appellants drove slowly around several parking lots looking for a car to enter, and had burglary tools in their possession, but left the scene without breaking into a car because they noticed that they were being followed. Id. at 21-22 (1). The appellants contended that there was insufficient evidence that they took a substantial step to enter an automobile, but we rejected that argument, noting:

4

[Appellants'] discussion regarding the theft of a car stereo and their possession of tools to aid in the commission of such a theft, without more, would not have amounted to an attempt to enter an automobile, but merely would have been preparatory acts not proximately leading to the consummation of the crime of entering an automobile. [Appellants], however, went beyond these remote acts of preparation when they drove to the shopping center parking lots in search of a specific car to enter.

Id. at 22 (1). See also *Adams v. State*, 178 Ga. App. 261 (342 SE2d 747) (1986), in which we observed:

The "substantial step" language of OCGA § 16-4-1 shifts the emphasis from what remains to be done to what the actor *has already done*. The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial. In addition to assuring firmness of criminal purpose, the requirement of a substantial step will remove very remote preparatory acts from the ambit of attempt liability and the relatively stringent sanctions imposed for attempts.

(Emphasis in original.) Id. at 263 (2) (b). In *Adams*, the appellant and his co-defendants drove a considerable distance to the hotel where they planned to commit a robbery. Id. However, they were stopped by police while they were driving around the hotel parking lot. Id. The appellant fled and was apprehended; police discovered that he was armed with a handgun and had two stocking caps on his head, one with holes cut in it for his eyes, nose, and mouth. Id. We concluded that the appellant's

actions were "inexplicable under the circumstances as a lawful act and are more than mere preparation," and that the jury was authorized to find that substantial steps had been taken towards the commission of armed robbery. Id. at 263-264 (2) (b).

In *New v. State*, 270 Ga. App. 341-342 (1) (606 SE2d 865) (2004), distinguished by the majority, the facts are generally similar to those shown here. New was observed in a business parking lot moving his car around in an unusual fashion, surreptitiously watching bystanders, and wearing a mask. Id. at 341 (1). The only distinguishing factor is that New was found in possession of a BB gun, while no weapon was found in Rainey's possession. Id. at 342 (1). But the absence of a weapon is not dispositive. In *Prins v. State*, 246 Ga. App. 585, 585 (1) (539 SE2d 236) (2000), overruled in part on other grounds, *Miller v. State*, 285 Ga. 285, 287 n.1 (676 SE2d 173) (2009), we affirmed Prins' conviction for armed robbery even though no weapon was seen or found. Prins walked to a bank window and handed the teller a note reading, "I have a gun Put 100 50 20 in bag I will kill you I have nothing to lose." *Prins*, supra, 246 Ga. App. at 585 (1). While he did not take any action to indicate that he was holding a weapon, one of his hands was not visible to the teller. Id. at 586 (1). We noted that for an armed robbery conviction, only "some evidence from which the presence of a weapon may be inferred" is required. (Citations

omitted.) Id. "Furthermore, the question is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon." (Citations and punctuation omitted.) Id.

Since the commission of armed robbery does not require the presence of an actual weapon, but only evidence from which a weapon's presence may be inferred, the notes discovered in Rainey's checkbook, taken in combination with the other behavior observed, could be considered by the jury as a substantial step towards the commission of an armed robbery.[2]

All our decisions on this issue reiterate that it is not our province to decide when or whether "mere preparation" becomes a "substantial step" constituting criminal attempt; that decision is for the jury. Here, the jury was authorized to conclude that Rainey's conduct, which was alarming enough to cause the foreman at the auto repair shop to arm himself and have an employee call the police, taken in

---

[2]The trial court and counsel discussed at some length the lack of proof of a weapon. Ultimately, the jury was presented with a choice between criminal attempt to commit armed robbery and criminal attempt to commit robbery, and decided in favor of armed robbery. Defense counsel briefly argued the absence of a weapon in closing. The jury was correctly charged on armed robbery and robbery, attempt, and abandonment. But Rainey does not argue these issues on appeal.

7

combination with the notes, was sufficient to constitute a substantial step towards commission of an armed robbery. The jury could have concluded that Rainey had the checkbook with the robbery notes on his person when he entered the CVS to scout or to rob it, but that he noticed the arrival of law enforcement at the auto repair shop, whereupon he left the CVS, took a circuitous route back to his vehicle, and tossed the checkbook into his car. In other words, "but for the presence of the officer[s], [Rainey] would have committed a[n armed] robbery." *Heard*, supra, 299 Ga. App. at 48 (1). The evidence was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and we should affirm.

2. Additionally, for the reasons stated below, I do not believe that either of Rainey's remaining enumerations of error warrants reversal. Rainey asserts two instances of ineffective assistance of trial counsel: (a) failure to file a motion to suppress the evidence obtained in the search of his car; and (b) failure to object to testimony by a sheriff's investigator that he contends went to the ultimate issue of the case.[3]

---

[3]To the extent that Rainey asserts that the search of his vehicle was unlawful, he has waived that claim by failing to file a written motion to suppress or to object to the admission of that evidence at trial. *Ferrell v. State*, 312 Ga. App. 122, 125 (2) (717 SE2d 705) (2011).

8

In reviewing a claim of ineffective assistance,

> [u]nder the two-part test established in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), [Rainey] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

(Citations and punctuation omitted.) *Harrison v. State*, 313 Ga. App. 861, 865 (3) (722 SE2d 774) (2012).

> As a general rule, reasonable trial tactics and strategies do not amount to ineffective assistance of counsel. The decisions on which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his or her client. Whether an attorney's trial tactics were reasonable is a question of law, not fact. When assessing the reasonableness of counsel's actions, a court must evaluate counsel's performance from his or her perspective at the time of trial. This Court reviews a trial court's ruling on an ineffective assistance claim on appeal by accepting the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. [Cits.]

*Hughley v. State*, 330 Ga. App. 786, 791 (4) (769 SE2d 537) (2015).

9

(a) Rainey first complains that trial counsel was ineffective in failing to file a motion to suppress the items found in the search of his vehicle.

Ordinarily, on the appeal of a trial court's ruling on a motion to suppress, the burden is on the State to show that the scope of an appellant's consent to search was not exceeded. *State v. Long*, 232 Ga. App. 445, 445-446 (502 SE2d 298) (1998). But when counsel is alleged to be ineffective due to failure to file a motion to suppress, appellant must make a "strong showing" that the motion would have been granted. *Millsap v. State*, 275 Ga. App. 732, 736 (3) (c) (621 SE2d 837) (2005). And "we defer to the trial court's findings of facts in reviewing its ruling on an ineffective assistance of counsel claim unless they are clearly erroneous, and the 'clearly erroneous' test is the same as the 'any evidence rule.' [Cits.]" *Gravitt v. State*, 301 Ga. App. 131, 133 (1) (687 SE2d 150) (2009).

One of the deputies testified to his conversation with Rainey as follows:

Q. What, if anything, did he say?

A. He offered to let me look inside the vehicle.

Q. And how did he do that? . . . . what did he say?

A. I believe his exact words were, "You can look inside if you want." And I replied to him, "You don't mind if I look throughout the vehicle?" Which he replied, "No."

We have held that, without more, consent to "look inside" a vehicle may not be arbitrarily expanded in scope to include a full-scale search of the interior and the contents of any containers. See, e. g., *State v. Diaz*, 191 Ga. App. 830, 832 (2) (383 SE2d 195) (1989). But here, the first deputy specifically followed up Rainey's offer with a request to "look *throughout* the vehicle," and Rainey agreed. Moreover, the second deputy specifically testified that Rainey gave consent to a search:

> Q. "Did you hear Mr. Rainey give [the first deputy] permission to search his vehicle?"
>
> A. "Yes, he did."

No testimony or evidence at the hearing on the motion for new trial contradicted the deputies' testimony, and the trial court found that Rainey "consented to a search of the car."[4] We cannot say that the trial court's ruling is clearly erroneous because it is supported by some evidence. See *Benike v. State*, 240 Ga. App. 400, 401 (523 SE2d 622) (1999). And "[i]t is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress." (Citations and

---

[4]The motion was heard and ruled upon by a successor judge rather than the judge who presided over Rainey's trial.

punctuation omitted.) *King v. State*, 287 Ga. App. 375, 377 (2) (a) (651 SE2d 496) (2007).

(b) Rainey's second claim of ineffective assistance is that trial counsel was ineffective for failing to object to the testimony of a sheriff's investigator going to the ultimate issue in the case. "Ordinarily, a witness may not express his opinion as to an ultimate fact, because to do so would invade the province of the jury." (Citation and punctuation omitted.) *Batten v. State*, 295 Ga. 442, 445 (3) (a) (761 SE2d 700 (2014). Here, the investigator testified on direct examination:

> Q. What did you arrest Mr. Rainey for?
>
> A. Criminal Attempt of Armed Robbery.
>
> Q. And why was it that you arrested him for Criminal Attempt to Commit Armed Robbery?
>
> A. Based on the evidence that I could see at the scene it appeared to me that Mr. Rainey had taken steps towards carrying out an Armed Robbery that day.

The contention that this testimony went to the ultimate issue is without merit. In *Oliphant v. State*, 295 Ga. 597, 600 (2) (a) (759 SE2d 821) (2014), the appellant claimed that his counsel should have objected to playing for the jury a portion of his

videotaped police interview, in which a police officer explained to him why he could be charged as a party to the crime. He contended that

> the officer's statements constituted an improper opinion on the ultimate issue of [his] guilt as an accomplice. We disagree, because here the officer was clearly not offering opinion testimony on the ultimate issue but was merely informing [appellant] as to the probable cause for his arrest. Counsel's failure to object to this [testimony] does not constitute deficient performance. [Cit.]

Id. Similarly, in *Batten*, supra, a detective testified "identifying appellant as the person who [he] arrested for committing this murder." 295 Ga. at 444 (2). Our Supreme Court held that appellant did not meet his heavy burden to show ineffectiveness on the basis of counsel's failure to object to this testimony, concluding that the testimony was "without consequence" because "[t]he jury could reasonably infer appellant, who was on trial for killing the victim, was arrested for that crime." Id. at 445 (3). Similarly, the jury could infer that Rainey was arrested for the crime for which he was on trial, and the witness was not testifying to the ultimate issue of Rainey's guilt but to why he arrested him; in other words, the "probable cause for his arrest." *Oliphant*, supra, 295 Ga. at 600 (2) (a).

Moreover, at the hearing on the motion for new trial, trial counsel testified that the witness "said [Rainey] had taken steps. He didn't say substantial steps. If he had said substantial, I guess I would have jumped up."[5] "[T]rial counsel was not ineffective where he articulated a valid strategic reason for not objecting to . . . evidence." (Citation omitted.) *Adams v. State*, 276 Ga. App. 319, 324 (6) (a) (623 SE2d 525) (2005). Here, even assuming that the testimony was objectionable, the "strategic decision not to object to this testimony was not so patently unreasonable that it amounted to deficient performance." *Silvey v. State*, 335 Ga. App. 383, 397 (3) (b) (iii) (780 SE2d 708) (2015). And while trial counsel agreed with Rainey's appellate counsel at the hearing on the motion for new trial that he "should have objected sooner, perhaps sooner," it is well established "that hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." (Citation and punctuation omitted.) *Shaw v. State*, 292 Ga. 871, 876 (3) (a) (742 SE2d 707) (2013).

For these reasons, I respectfully dissent.

---

[5]Trial counsel did object shortly afterwards, when the witness began to testify in detail to the legal reasons for bringing the charges: "Your Honor, I'm going to object if he's going to start stating matters of law."

14

I am authorized to state that Judge Branch joins in this dissent.